**Tomas MENCHACA and wife, Irma Menchaca, Plaintiffs-Appellants,**

v.

**CHRYSLER CREDIT CORPORATION et al., Defendants-Appellees.**

No. 77–3186.

United States Court of Appeals, Fifth Circuit.

March 7, 1980.

508

J. G. Hornberger, Jr., J. G. Hornberger, Laredo, Tex., for plaintiffs-appellants.

Horace C. Hall, III, Laredo, Tex., for City of Laredo and Blume.

George P. Kazen, Richard N. Hansen, Laredo, Tex., for Chrysler Credit Corp.

Before AINSWORTH, INGRAHAM and GARZA, Circuit Judges.

INGRAHAM, Circuit Judge:

■ This appeal emerges from a dispute surrounding the presence of the defendant police officers during the course of a repossession of plaintiffs' automobile by agents of defendant Chrysler Credit Corporation. Plaintiffs' civil rights complaint under 42 U.S.C. § 1983 was the subject of a motion to dismiss for lack of the requisite subject matter jurisdiction. The district court held a hearing and found that the necessary state action element was missing. Accordingly, the motion was granted and the complaint dismissed. Plaintiffs timely appealed to this court seeking reversal of the district court judgment. We affirm.[1]

In December 1974, plaintiffs Tomas and Irma Menchaca purchased a 1975 Chrysler Cordoba automobile which was financed under a retail installment agreement with defendant Chrysler Credit Corporation (Chrysler). The contract included the usual acceleration clause and a provision permitting Chrysler to retake the automobile in the event of default by the plaintiffs.[2] At this time, plaintiffs also purchased two insurance policies that were included in the same installment agreement. One policy covered physical damage to the automobile.

There is a dispute as to what the other policy covered; plaintiffs claimed the policy was disability insurance, however, Chrysler contended it was credit life insurance. In any event, the resolution of that dispute between the Menchacas and Chrysler is not in issue in this lawsuit.[3]

Subsequently, in August 1977, plaintiffs became two months delinquent on their obligation to make installment payments. Sometime around August 25, 1977, defendant Norman Clark, an agent for collection, went to plaintiffs' home in Laredo, Texas, to seek payment of the past due amounts. He spoke with Mrs. Menchaca and informed her that the automobile would be repossessed on the following Monday at noon if both payments were not received by then. It appears from the record that Mrs. Menchaca did not tell Mr. Menchaca about the visit from defendant Clark.

At this time, Mr. Menchaca was unemployed due to a disabling injury he suffered while at work. Mrs. Menchaca was employed at Autophones of Laredo, earning approximately $90 per week. Mr. Menchaca's workmen's compensation benefits were $77 per week and the couple was receiving food stamp assistance. The Menchacas, parents of four children, were unquestionably experiencing financial difficulties in trying to meet the approximately $175 per month note payments.

---

1. Although vicarious liability was originally urged by plaintiffs as a point of law germane to the outcome of this appeal, none of the parties dispute the fact that under *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the City of Laredo could not be vicariously liable since there was no governmental custom, plan or scheme to provide official assistance or aid in the repossession of automobiles by private parties pursuant to their private contractual arrangements. Moreover, our disposition of this appeal speaks to the district court's subject matter jurisdiction. The issue of the vicarious liability of the City of Laredo is only a collateral matter insofar as the complaint was dismissed as to all parties for lack of jurisdiction.

2. Paragraph 2 of the installment contract provided:

> If Buyer defaults in any payment . . . Seller shall have the right, at its election, to declare the unpaid portion of the Total of Payments under this contract to be immediately due and payable, together with any other amount for which Buyer shall have been obligated hereunder. In any such event, Seller, its agents or representatives, may enter the premises where the property may be and take immediate possession of the property including any equipment or accessories, and Seller may take possession of any other items in the property at the time of repossession, and hold them without liability until demanded by Buyer.

3. At oral argument counsel for Chrysler informed us that this dispute over the insurance agreement is the subject of another action pending in the Texas state courts.

On that following Monday noon, August 29, 1977, two men arrived in a pickup truck equipped with a winch and proceeded to ready the Menchacas' car for towing. It is undisputed that the Menchacas' automobile was parked on the public street at that time. Upon noticing this event, Mr. Menchaca rushed out to try and prevent the repossession. Apparently some rather loud and abusive language was spoken by Mr. Menchaca, which eventually resulted in the defendant police officers being summoned to check out the disturbance.

Meanwhile, Mrs. Menchaca phoned her attorney, who would not be able to arrive until about 2 P.M. She explained this to the men and to the defendant police officers. One of the men showed Officer Blume the repossession papers and told her and the Menchacas that they could not wait for two hours until the Menchacas' attorney arrived. The Menchacas were informed by Officer Blume that repossession was a civil matter and that the only reason the police were there was to quiet a reported disturbance. Mr. Menchaca was informed that he could be arrested if he continued to use loud and abusive language and create a breach of the peace.

The situation became somewhat less volatile and the officers left. The car was still hooked to the winch; however, the men remained for five minutes or so while Mr. Menchaca removed from the car some possessions, including a CB radio and antenna. Subsequently, the men left with the Menchacas' automobile in tow.

The Menchacas brought this action under 42 U.S.C. § 1983 against all the defendants, alleging a conspiracy to deny them their rights, privileges and immunities under the Fourteenth Amendment to the United States Constitution. They sought damages, injunctive relief requiring return of the car

pending the outcome of the suit, attorney's fees and costs. The district court granted the injunction; however, that order was modified to require merely that defendant Chrysler not dispose of the vehicle until the court granted its approval.

Defendant Chrysler filed a motion to dismiss, challenging the district court's subject matter jurisdiction. The court held a full evidentiary hearing in which both plaintiffs and three of the defendants gave oral testimony under direct and cross examination. At the close of the hearing, the district court found, based on its evaluation of the testimony of all the witnesses, that there was no conspiracy between the officers and the men seeking to repossess the automobile. Moreover, the court could find no other indicia of state involvement,[4] and hence no state action as jurisdictionally required under 42 U.S.C. § 1983. Accordingly, the motion was granted and the action was dismissed as to all parties.

Plaintiffs have appealed and they argue numerous errors in the district court proceeding. While we are not unmindful of the points that plaintiffs raise, we conclude that the existence of state action was a question central to the district court's own jurisdiction to hear the case. It was thus within the province of the court to decide the merits of that issue, and the district court did not err when it found no state action and dismissed the complaint. We therefore need not consider the other issues raised.

In order for plaintiffs to maintain this claim under 42 U.S.C. § 1983 there are two essential elements which they must show. First, that defendants have deprived them of a right secured by the Constitution and the laws of the United States; second, that this deprivation has occurred while the defendants were acting under color of law.[5]

4. It was undisputed that the officers had never been involved in an automobile repossession, had never met the Menchacas, and had never met the repossession men. Moreover, there was no evidence of any history of police department "cooperation" with repossession agents and no evidence of any pre-arranged

plan between any of the defendants and the police.

5. 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United

*Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185, 193 (1978). Plaintiffs alleged in their complaint that they were deprived of rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution when defendants repossessed their car without judicial notice and a hearing. Additionally, plaintiffs alleged that officers Palacios, Blume and, vicariously, the City of Laredo, acted in concert with defendant Chrysler to deprive them of those rights without due process of law.

■ Despite plaintiffs' allegations of multiple bases of jurisdiction in their original complaint, the parties agree that the sole basis of jurisdiction that could support this claim is 42 U.S.C. § 1983. As such, the existence of the "under color of law" element of the claim, i. e., state action, is required in order to invoke the district court's jurisdiction. We therefore must limit our initial inquiry to that narrow question. Adding another dimension to this inquiry, however, plaintiffs claim that the district court holding that there was no state action denied plaintiffs their Seventh Amendment right to a jury trial. We disagree.

■ It is axiomatic that a district court may inquire into the basis of its subject matter jurisdiction at any stage of the proceedings. *See* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3522 (1975). *A fortiori* a motion to dismiss under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction must include an inquiry by the court into its own jurisdiction.

■■ A "facial attack" on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A "factual

attack," however, challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered. *Id.* Moreover, a "factual attack" under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist. *Id.* at 891–92; *McLain v. Real Estate Board of New Orleans, Inc.*, 583 F.2d 1315, 1318 n. 1 (5th Cir. 1978), *vacated and remanded on other grounds,* —— U.S. ——, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). *See* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1350, at 555 (1969). *Accord, Thornhill Publishing Co. v. General Telephone & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

In the instant case the district court held a hearing on October 5, 1977, on defendant Chrysler's motion to dismiss for lack of subject matter jurisdiction, at which time testimony was heard from both plaintiffs, both defendant police officers and defendant Norman Clark. Some of the facts were disputed. In particular, both officers vehemently denied that either of them ever told either of the plaintiffs that defendant Chrysler's agents had a right to repossess the automobile or that Mr. Menchaca would be arrested if he resisted. In fact, Officer Blume testified, and was corroborated by Officer Palacios and the plaintiffs themselves, that she told the plaintiffs that repossession was a civil matter which did not concern the police. The defendant police officers' sole reason for being there was to answer a complaint on a disturbance relating to loud and abusive language by Mr. Menchaca.

The plaintiffs testified, albeit inconsistently at times, that they gave up possession of the car because the police had led them to believe they had no choice. Defendants admitted that Mr. Menchaca was informed that he would be arrested for breach of the peace if he continued using loud and abu-

States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitu-

tion and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

sive language. However, defendants Palacios and Blume both denied that Blume ever told ·Mr. Menchaca that he had to relinquish possession of the automobile. The police were there merely to calm a disturbance.

At the close of the hearing, the district court issued its memorandum and order dismissing the complaint for lack of jurisdiction, finding no state action. One of plaintiffs' arguments on this appeal is that they were denied their Seventh Amendment right to a jury trial when the court made that finding. In *Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co.*, 469 F.2d 416 (5th Cir. 1972), the court noted: "Rosemound urges that it was denied its Seventh Amendment right to a trial by jury because of the trial judge's decision on the jurisdictional question. The short answer is that there has been no denial of this right because questions of jurisdiction are properly within the ambit of the court's authority." *Id.* at 418. *See* 5 C. Wright & A. Miller, *supra*, § 1350, at 556–58. Plaintiffs' argument is without merit.·

■ While it may be contended that the district court could have awaited "determination of the merits either by the court on a summary judgment motion or by the fact finder at trial," *id.* at 558, the court was not bound to do so. *Gilbert v. David*, 235 U.S. 561, 35 S.Ct. 164, 59 L.Ed. 360 (1915). We do not believe the court abused its discretion to decide the merits of the jurisdictional issue, especially since all parties had testified and little else, if anything, remained to be presented to the court for its consideration.

■ The dissent suggests that since one party (Chrysler) moved for dismissal under Rule 12(b)(1) and another party (Norman Clark) moved for dismissal under Rule 12(b)(6), the district court should not have weighed the evidence necessary to determine the facts supporting its jurisdiction and that it should have been determined by the factfinder in a trial on the merits. The dissent overlooks the fact that absent some form of concerted conduct on the part of the police officers, there was no jurisdiction to support *any other claims* against the remaining defendants. Although the allegations of a complaint are taken as true in a challenge to a plaintiff's right to any relief, they may be tested by extraneous evidence when the court's jurisdiction is attacked. If the allegations do not survive the jurisdictional attack, then there is no jurisdiction even to consider the other claims, much less to entertain a Rule 12(b)(6) motion to dismiss those claims.

■ We wish to emphasize that this ·case was not treated by the district court as a summary pretrial disposition as the dissent contends. As noted earlier, plaintiffs' counsel called five witnesses to testify at the October 5, 1977 hearing, four of whom were present at the original scene, including the plaintiffs themselves. With the exception of the defendant Chrysler's repossession agents, there were no other potential witnesses with firsthand knowledge who could later add anything to what was adduced at that hearing. The trial court heard on both direct and cross-examination every witness offered by the plaintiffs and observed the demeanor, candor and responsiveness of all the witnesses. Numerous exhibits were received into evidence. Plaintiffs had every opportunity to convince the court that the defendant police officers had acted in concert with defendant Chrysler's agents. Plaintiffs were unconvincing[6]

---

6. For example, we note the inconsistency in the plaintiffs' own versions of an alleged threat made by Officer Blume, by way of the following colloquy between Mr. Menchaca and defendant Chrysler's counsel:

Q: Now, this last statement that you made, that the reason that you didn't continue to argue about the car was because Officer Blume had told these other gentlemen that if you gave them any more trouble, just call them and they'd come and pick you up?

A: That's right. That's the exact words.
Q: Your wife didn't testify to that, did she?
A: No, sir, she didn't.
Q: Did she hear it?
A: She did.
Q: Then why didn't she testify to it?
A: That's her story. I don't know. I'm saying what I said.
Q: Don't you think this is rather crucial to your case?

and hence the critical element state action was absent, thus depriving the district court of subject matter jurisdiction to hear any portion of the claim. We agree with the dissent's contention that police intervention and aid in this repossession by defendant Chrysler's agents would constitute state action; however, the testimony failed to show such intervention and aid. We are supported by earlier decisions of this court in *Calderon v. United Furniture Co.*, 505 F.2d 950 (5th Cir. 1974), and *White v. Scrivner Corp.*, 594 F.2d 140 (5th Cir. 1979).

The remainder of plaintiffs' arguments need not be addressed. The district court found that there was no state action and, accordingly, granted defendant Chrysler's motion to dismiss for lack of subject matter jurisdiction. This issue is dispositive of the appeal, and finding no error in the district court holding, the judgment is

AFFIRMED.

GARZA, Circuit Judge, dissenting:

I respectfully dissent from the opinion of my esteemed brethren. I am unable to agree with either the incomplete recital of the facts in this case, or with the application of precedent concerning standards for consideration of Fed.R.Civ.P. 12(b)(1) and 12(b)(6) motions to dismiss by the district courts. Both the court below and the majority have accepted a version of the facts offered by the Appellees to reach their determination of lack of jurisdiction. I believe that the District Court was prohibited from so weighing the evidence on a motion to dismiss under 12(b)(6), and that under 12(b)(1), and authorities construing, it should have carried the fact issues relevant to a jurisdictional determination over to trial on the merits. If the allegations of Mr. and Mrs. Menchaca are true, there clearly is jurisdiction by virtue of 42 U.S.C. § 1983. The trial court not only erred in refusing to defer a determination of those issues, it sustained a substantial injustice which the laws of Texas and the United States were intended to prevent. I cannot be a party to an open license by this court for self-help repossessors to persist beyond the point that Texas law requires them to desist and go to court, and for them to so proceed with the aid of the police. I would reverse, and remand for trial on the merits.

I.

A more complete recital of the facts is necessary. The Menchacas claim to have paid a premium of $232.00 for disability protection when they purchased their car, and assert that Chrysler mistakenly did not so credit their payment. In any event, Mr. Menchaca suffered a work-related injury on November 11, 1976, and became unable to work. He and his wife were forced to rely on the small payments he received under the state Worker's Compensation law and on her modest salary to support themselves and their four children. Despite Chrysler's refusal to recognize any disability protection, Mr. and Mrs. Menchaca were able to meet their payments through the following June. In July and August they simply could not, and defaulted. They had put $1,150 down, and had paid approximately $6,000.00 total to Chrysler.

In summarizing the events of August 29, 1977, the majority wholly adopts the defendant's version, as did the District Court. It ignored the undisputed fact that it was the two repossessors who summoned the policemen after Mr. Menchaca appeared to thwart their attempts at taking his car. That fact is central. The following facts, offered by the Menchacas, were disregarded by the District Court and the majority. Mrs. Menchaca testified that when she begged the repossessors to wait until her attorney arrived, Officer Blume stated: "Well, if he cannot wait that long, they just

A: Well, sir, what she said is her story, and what I said is my story.
Q: And the fact that they are not the same, doesn't that bother you?
A: It doesn't bother me because it's the truth.

Q: Her story or your story?
A: My story, her story too.
Q: Even though they are different?
A: Whatever, it's still the truth.
Supplemental Record at 111–12.

have to take the car and you can talk this over later with your lawyer—take this up later with your lawyer." She further testified that Officer Blasa Blume told Mr. Menchaca that she would give him five minutes to remove his personal belongings from the car. Officer Blume allegedly also stated that she "already had it up to here," and "let him take the damn car. You've already lost it." Mrs. Menchaca went on to testify that as she left, Officer Blume told one of the repossessors, "We're leaving, and if he gives you any more trouble, call us and we'll come arrest him and take him in." In response to the question, "And why is it your husband stopped objecting to the taking of this car?," Mrs. Menchaca replied: "Because she told us—told my husband she was going to arrest him if he didn't go ahead and let them take it—give them the keys."

Mr. Menchaca testified that after he began quarrelling with the repossessors, one of them said to the other, "Why don't you go call the police?" He stated that the other man did so, and that Officers Blume and Palacios arrived within two or three minutes. According to Menchaca, Officer Blume asked, "Do you have a court order, I mean, just the paper, whatever, saying that you can repossess the car?" The repossessor showed her a paper, and she allegedly replied, "Then you have the right to take the car." Menchaca said that he replied, "I'll be goddamned if you're going to take the car," and Blume responded: "Stop talking like that or we're going to have to take you in." It is undisputed that the repossessors had no court order. From this point, Tomas Menchaca's testimony echoed that of Irma Menchaca.

The Menchacas' original complaint named as Defendants Chrysler Credit Corporation, Officers Blume and Palacios, City of Laredo, Norman Clark, and Blazer Financial Services, Inc. It was averred that at all times Clark and Blazer acted as agents of Chrysler Credit Corporation. The complaint alleged that Chrysler attempted to seize the Menchacas' automobile in the manner described by their testimony:

5. On August 29, 1977, at 1:00 o'clock p. m., Defendant Chrysler Credit Corporation arrived at the Plaintiffs' home and began to seize and repossess the automobile with the use of a tow-truck. The Plaintiffs informed Defendant Chrysler Credit Corporation that they objected to such seizure. Defendant Chrysler Credit Corporation telephonically summoned two police officers from the City of Laredo and threatened that Defendant Chrysler Credit Corporation would arrest Plaintiffs and file charges and criminal actions against Plaintiffs when in fact Plaintiffs had not violated any criminal laws. Defendants Chrysler Credit Corporation deliberately and intentionally and in concert with Defendants Blume and Palacios, intimidated and coerced Plaintiffs into relinquishing their property.

6. Defendants Blume and Palacios threatened Plaintiffs with arrest charges, and criminal action for objecting and resisting the seizure of their property. Defendants Blume and Palacios used abusive, profane, and obscene language, both in Spanish and English, against the Plaintiffs to intimidate and coerce the Plaintiffs into relinquishing their property to the Defendants.

The City of Laredo filed a "Motion to Dismiss For Failure To State A Cause Of Action Upon Which Relief May Be Granted." That is the form of dismissal motion contemplated by Rule 12(b)(6). Officer Blume answered, denying the allegations that she used profane language or threatened the Menchacas into relinquishing their property to the Defendants. Norman Clark and Blazer Financial Services moved to dismiss under Rule 12(b)(6), and noticed that they would also move under 12(b)(1). Chrysler Credit Corporation moved to dismiss for lack of jurisdiction over the subject matter, obviously under 12(b)(1). The testimony summarized above was taken at a hearing on October 5, 1977. On October 6, the Court entered the following memorandum and order:

Mr. and Mrs. Tomas Menchaca were having altercation [sic] with a Mr. Kelly and another gentlemen [sic] who were

sent to repossess a 1975 Chrysler Cordoba. During the altercation the other gentlemen who was with Mr. Kelly called the police. The police came on the scene to quiet a disturbance. Police Officer Blume, in fact, took a machete away from the possession of Mr. Menchaca and gave it to a neighbor to see that there was no violence. There is some dispute as to whether she gave them any advise. [sic] However, the Menchaca's [sic] had called their attorney and were going to rely on what their attorney told them and not what a female officer of the City of Laredo told them.

There existed no conspiracy between the officers of the police and the parties seeking to repossess the car. The Court finds that the officers arrived at the scene to quiet a disturbance and had made no agreement prior to arriving there to try to repossess the automobile. When they left, the situation had been calmed down and the automobile was still there. The parties were still waiting for the attorney to arrive at the scene when the officers left.

This Court cannot find any State action in this situation which would invoke the jurisdiction of the Federal Court. Therefore, the case is dismissed as to all parties.

It is important to note that the Court weighed the evidence in reaching that conclusion. "There is some dispute . . . ." The Court's gratuitous comment that the Menchacas would listen to their lawyer and not the commands of a police officer threatening arrest is simply amazing. I can find nothing in the record to indicate that Mr. Menchaca threatened anyone with a machete.

## II.

The self-help repossession provision of the Uniform Commercial Code, adopted in Texas as Tex.Bus.Comm.Code Ann. Art. 9.503 (Vernon 1975) reads in pertinent part:

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking posses-

sion a secured party may proceed without judicial process if this can be done without breach of peace or may proceed with action.

This provision has been interpreted in Texas to mean that a repossession must be "peaceable," accomplished without force or violence. *Ford Motor Credit Company v. Cole*, 503 S.W.2d 853 (Tex.Civ.App.—Fort Worth 1973, writ dism'd). Clearly, it contemplates that if peaceable repossession cannot be had, the remedy of the would-be repossessor lies with the courts. *See Hubbard v. Lagow,* 576 S.W.2d 163 (Tex.Civ. App.—Austin 1979, writ ref'd n. r. e.).

That the "state action" requisite for § 1983 jurisdiction would be present, if the Menchacas should prevail on their assertions of police intervention and facilitation of a § 9–503 repossession, cannot be doubted. By *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Supreme Court has declared that the states may not contravene the constitutional right to be heard by authorizing a seizure of property in the possession of one person upon the application of another without providing the opportunity for a hearing. The question naturally arose whether § 9–503 of the U.C.C., in providing for self-help repossession, *by its very existence* constituted the necessary state action ingredient to a suit for deprivation of procedural due process rights via § 1983. It is now settled that a private repossession under the Code provision, *alone,* is not state action. *Calderon v. United Furniture Company*, 505 F.2d 950 (5 Cir. 1974); *Brantley v. Union Bank and Trust Co.*, 498 F.2d 365 (5 Cir. 1974); *James v. Pinnix*, 495 F.2d 206 (5 Cir. 1974); *See also* Annot., *Validity, Under Federal Constitution and Laws, of Self-Help Repossession Provision of § 9–503 of Uniform Commercial Code*, 29 A.L.R.Fed. 418 (1976).

Between these two points, recovery of property through procedures involving process issued under the authority of the state without hearing, and wholly private recovery under enabling legislation provid-

ed by the state, will fall a situation where the police directly facilitate a private recovery. Assuming, arguendo, that the Menchacas are correct, that is the situation before us. I am emphatically of the opinion that it crosses the line into the range of state action prohibited by § 1983. Surely, if the process of a state may not issue for garnishment of wages or replevin of personal property without the opportunity of a hearing, then state officers may not with impunity bring about the same result. To hold that this sort of intervention does not constitute state action would be to frustrate the purpose of *Fuentes, Sniadach*, and § 9–503 itself.

The Supreme Court made clear in *United States v. Price*, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) that private persons acting jointly with state officials in a prohibited undertaking themselves act under color of law. We need not look for any "symbiotic" relationship or other tenuous contention between Chrysler and the state, as has been attempted in other cases. *See, e. g., James v. Pinnix, supra; Adams v. Southern California First National Bank*, 492 F.2d 324 (9 Cir. 1973). If the Menchacas prevail as to the facts on trial, then the connection was immediate and critical.

Police officers have no business facilitating a repossession under that section. If the conduct alleged did in fact occur, the Laredo police department would be wise to train its officers to intervene neutrally where necessary to prevent a breach of the peace, but certainly not to aid the self-help repossessor. For the reasons stated above, I believe action to the contrary is an outrage, and squarely within the ambit of § 1983.

### III.

The District Court erred in summarily determining the facts of this case against the Menchacas on motion to dismiss under Rule 12, as the determination of facts necessary to pass judgment on the jurisdictional issue discussed above should have been postponed until trial. As I have detailed, one party moved for dismissal under Rule

12(b)(1), one so moved under 12(b)(6), and two proceeded under both. The majority wholly ignores the important procedural distinctions between these sections.

It is beyond dispute that under 12(b)(6) a district court may not indulge in consideration of a "factual" attack by affidavits and testimony upon the sufficiency of allegations concerning subject matter jurisdiction. "The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief." 5 Wright and Miller, Federal Practice and Procedure, § 1356 at p. 590 (1969). The District Court was required to take those allegations as true. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *Johnson v. Wells*, 566 F.2d 1016 (5 Cir. 1978); *Mann v. Adams Realty Co.*, 556 F.2d 288 (5 Cir. 1977). "It is axiomatic that a motion to dismiss an action for failure to state a claim upon which relief can be granted admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts." *Ward v. Hudnell*, 366 F.2d 247, 249 (5 Cir. 1966). The allegations of the Menchacas are in my view clearly sufficient to confer subject matter jurisdiction under § 1983. The majority, however, simply ignored the fact that at least one motion to dismiss was based entirely upon Rule 12(b)(6).

The other motions, under Rule 12(b)(1), would ordinarily open a Plaintiff's allegations to factual attack in a pre-trial hearing on subject matter jurisdiction. The District Court should be aware that after such an inquiry it may dismiss for lack of subject matter jurisdiction "only if the federal claims are 'wholly insubstantial or frivolous.'" *Save Our Cemeteries v. Archdiocese of New Orleans*, 568 F.2d 1074 (5 Cir. 1978), *citing Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The controlling cases here, however, are those by this court and others noting that where the jurisdictional issue is factually intertwined with the merits, to a large ex-

tent, the court should postpone a decision until evidence is submitted at trial.

In *McBeath v. Inter-American Citizens For Decency Committee*, 374 F.2d 359 (5 Cir. 1967), this court stated that a district court may determine the prerequisites of jurisdiction in advance of a trial on the merits. The court reversed a pre-trial dismissal for lack of jurisdiction, however, holding that "where the factual and jurisdictional issues are completely intermeshed the jurisdictional issues should be referred to the merits, for it is impossible to decide one without the other." 374 F.2d at 363. It was noted that the Supreme Court, in *Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), recognized that there are cases "where the question of jurisdiction is dependent on decision of the merits." 374 F.2d at 363. The policy behind this line of cases was discussed in *Continental Casualty Company v. Department of Highways, State of La.*, 379 F.2d 673 (5 Cir. 1967), wherein the District Courts were advised to be "mindful that when the issue of the jurisdictional amount is intertwined with the merits of the case, courts should be

careful not to decide the merits, under the guise of determining jurisdiction, without the ordinary incidents of a trial." 379 F.2d at 675.[1]

The majority does not believe "the court abused its discretion to decide the merits of the jurisdictional issue . . ." I believe that it manifestly did so by summarily disposing of this case. The facts pertinent to decision on the merits are exactly those pertinent to a decision on jurisdiction. If the rationale of the cases quoted above is to have application anywhere, it should apply here. Thus, under *either* Rule 12(b)(1) or 12(b)(6), the District Court was precluded from conducting the type of inquiry it did and from rendering final judgment on the motions to dismiss.[2] We enter dangerous territory when we sanction this sort of summary pre-trial disposition on jurisdictional grounds of cases involving vigorously disputed factual allegations, particularly where important constitutional rights are involved. It is quite possible that in such a rush to judgment the truth, that which our rules governing trial on the merits are designed to glean, will be lost.

1. *Accord: Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280 (9 Cir. 1977) ("Where the jurisdictional facts are intertwined with the merits, a decision on the jurisdictional issues is dependent on a decision of the merits. In such a case, the district court could determine its jurisdiction in a plenary pretrial proceeding . . . However, it is preferable that this determination be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits." *Id.* at 1285, n. 2); *Zunamon v. Brown*, 418 F.2d 883 (8 Cir. 1969) (". . . in resolving the question of the appropriateness of jurisdiction as measured by the legal certainty of Plaintiff's claim, all doubts should be resolved by the district court in favor of allowing a plenary trial rather than a peremptory 'trial' under the guise of an evidentiary jurisdictional hearing." *Id.* at 886); *Jaconski v. Avisun Corporation*, 359 F.2d 931 (3 Cir. 1966) ("Except in the plainest cases the issue of jurisdictional amount should not be decided if the ruling constitutes at the same time a decision on the merits." *Id.* at 935); *Wade v. Rogala*, 270 F.2d 280 (3 Cir. 1959) ("Indeed, since the issue of jurisdictional amount in this case is so closely tied to the merits of the cause, insistence upon evidence with respect thereto must be limited 'lest, under the guise of determining jurisdiction, the

merits of the controversy between the parties be summarily decided without the ordinary incidents of a trial, including the right to a jury.'" *Id.* at 285); *Fireman's Fund Insurance Company v. Railway Express Agency*, 253 F.2d 780 (6 Cir. 1958) ("Where the jurisdictional issue as to amount in controversy can not be decided without a ruling constituting at the same time a ruling on the merits of the case, the case should be heard and determined on its merits through regular trial procedure." *Id.* at 784).

2. Judge Ingraham, in his rejoinder to my dissent, summarizes my argument as being based on the fact that there were both 12(b)(1) and 12(b)(6) motions. That is not my point. My colleague is doubtless correct in holding that where there are motions to dismiss under both rules and a district court is able to pierce the pleadings under 12(b)(1) and find a lack of jurisdiction, the 12(b)(6) motion is obviated and where appropriate the entire suit may be dismissed. I have argued that in this case, in considering a motion to dismiss under *either* rule alone or both rules together, the District Court was required to determine the issues through trial by virtue of the case law construing each rule.

I would not hold that the District Court erred by depriving Plaintiffs a jury trial in making its pre-trial ruling, but only that it should have waited until trial for the reasons stated above. I have outlined my reasons for concluding that if the Menchacas were to prevail on the facts, there would be jurisdiction. I would accord them the opportunity to try.