Angelita **PUNZALAN** et al., Plaintiffs,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION and JP Morgan Chase Bank, N.A., Defendants.**

No. EP–09–CV–87–PRM.

United States District Court,
W.D. Texas,
El Paso Division.

July 6, 2009.

408

James B. Wilcox, Jr., James B. Wilcox, Jr., LLC, Washington, DC, Victor M. Firth, Firth Johnston Martinez, El Paso, TX, for Plaintiffs.

David A. Super, Elysa M. Dishman, Richard P. Sobiecki, Samuel J. Waldon, Baker Botts LLP, Washington, DC, John R. Jones, Bickerstaff Heath Delgado Acosta LLP, Austin, TX, Alejandro Acosta, Jr., Bickerstaff Heath Delgado Acosta LLP, El Paso, TX, for Defendants.

## ORDER GRANTING DEFENDANT FDIC's MOTION TO DISMISS

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered Defendant Federal Deposit Insurance Corporation's (FDIC) "Opposed Motion to Dismiss for Lack of Subject Matter Jurisdiction," filed on April 14, 2009; the Punzalans' "Opposition to Defendant FDIC/Receiver's Motion to Dismiss for Lack of Subject Matter Jurisdiction," filed on April 27, 2009; and FDIC's "Reply in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction," filed on May 11, 2009, in the above-captioned cause. After due consideration, the Court is of the opinion that the motion should be granted and that the Punzalans' cause of action against FDIC should be dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Punzalans' lawsuit in Texas state court

On April 2, 2003, the Punzalans filed a lawsuit for wrongful foreclosure on behalf of themselves and unnamed plaintiffs against HomeSide and HomeSide Lending Delaware, LLC in County Court at Law Number Five in El Paso, Texas. Pls.' Orig. Class Action Pet. ¶ 32. In the suit, the Punzalans alleged: (1) that HomeSide's foreclosure procedures violated TEX. PROP. CODE § 51.002(d), resulting in the unlawful foreclosure of their home; and (2) that as a consequence of this allegedly unlawful foreclosure, HomeSide unjustly enriched itself. Pls.' First Am. Compl. ¶¶ 31–34, ¶¶ 35–37. Washington Mutual Bank (Washington Mutual) answered the Punzalans' complaint, identifying itself as the legal successor to HomeSide, and thus the proper defendant in the Punzalans' lawsuit. Pls.' First Am. Compl. ¶ 2. On May 2, 2008, following a protracted discovery dispute, the state trial court denied the Punzalans' motion for class certification, and the Punzalans subsequently appealed that denial to the Court of Appeals for the Eighth District of Texas, on June 17, 2008. Pls.' Opp'n 2.

### B. FDIC's appointment as receiver and Chase Bank's purchase of Washington Mutual

On September 25, 2008, during the pendency of the Punzalans' appeal, the Office of Thrift Supervision (OTS)—acting pursuant to its authority under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA)—closed Washington Mutual and appointed FDIC as its Receiver.[1] OTS Order No. 2008–36; 12 U.S.C. § 1821(c) (2006) (providing for the appointment of FDIC as Receiver of a failed depository institution). Contemporaneous with the appointment of FDIC as Receiver, J.P Morgan Chase Bank, National Association (Chase Bank) entered into a contract entitled "Purchase and Assumption Agreement" (the P & A Agreement) with FDIC. Def.'s Mot. to Dismiss Ex. E. Under Section 2.5 of the P & A Agreement, Chase Bank purchased Washington Mutual on the condition that FDIC

---

1. Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101–73, 83 Stat. 183 (1989) (codified in scattered sections of Titles 12 and 15 of the United States Code). As the Fifth Circuit has noted, "Congress enacted FIRREA to remedy the problems it perceived in the existing regulatory scheme in the savings and loan industry." *Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 881 (5th Cir.1992) (citing H.Rep. No. 101–54(I), 101st Cong., 1st Sess. 291–312, *reprinted in* 1989 U.S.Code Cong. & Admin.News 86, 87–108). Among other things, FIRREA authorizes OTS to appoint FDIC as a Receiver "for the purpose of liquidation or winding up the affairs of an insured Federal depository institution" like Washington Mutual. 12 U.S.C. § 1821(c)(2)(A)(ii).

**410**

remain responsible for any "Borrower Claims" against Washington Mutual "related in any way to any loan or commitment to lend made by [Washington Mutual] prior to failure ... or otherwise arising in connection with the Washington Mutual's lending or loan purchase activities[.]" Def.'s Mot. to Dismiss, Ex. E. In exchange, pursuant to Section 2.1 of the P & A Agreement, Chase Bank promised to assume responsibility for all other liabilities, specifically including "all mortgage servicing rights and obligations of [Washington Mutual]." Pl.'s Opp'n 4 (quoting Def.'s Mot. to Dismiss Ex. E).

On December 5, 2008, FDIC filed a pair of motions in the Court of Appeals for the Eighth District of Texas, requesting that it be substituted for Washington Mutual as defendant, and for a stay of the Punzalans' appeal for ninety days as required by FIRREA. FDIC Receiver's Motion to Substitute Itself for WAMU, *Punzalan*, No.2003–1308 (Tex.App.-El Paso, *filed* Dec. 5, 2008); *See* 12 U.S.C. § 1821(d)(12) (requiring courts to grant a ninety-day stay upon FDIC's request, of any pending litigation against a failed bank for which FDIC has been appointed receiver). The Court of Appeals substituted FDIC and stayed the appeal in an order dated January 14, 2009. Def.'s Mot. to Dismiss Ex. G.

### C. FDIC's attempt to comply with FIRREA's notice requirements

On December 18, 2008, while the Court of Appeals considered FDIC's motions for

stay and substitution, FDIC attempted to mail individual notice of FIRREA's administrative-claims procedure to the Punzalans.[2] Def.'s Mot. to Dismiss 2 Ex. B. In that notice, FDIC advised the Punzalans that they had to submit their claims against Washington Mutual to FDIC for administrative review by March 18, 2009, the "claims bar date." *Id.* Additionally, FDIC published and re-published similar notice in various newspapers of wide distribution, as required by FIRREA. (*Id.* at 5, Ex. A, attach. 2–3); *see* 12 U.S.C. § 1821(d)(3)(B) (requiring publication notice).

The Punzalans never filed an administrative claim with FDIC.

### D. FDIC's removal to federal court and its motion to dismiss

On March 9, 2009, after obtaining the stay of the Punzalans' appeal in state court, FDIC removed the case to federal court. Docket No. 1. On April 14, 2009, FDIC filed a motion to dismiss for lack of subject-matter jurisdiction pursuant to FED.R.CIV.P. 12(b)(1). Def.'s Mot. to Dismiss 1.

In its motion, FDIC "requests that the Court dismiss Plaintiffs' action for lack of subject matter jurisdiction because Plaintiffs have failed to exhaust the mandatory administrative claims process set forth in 12 U.S.C. §§ 1821(d)(3) through (13)." *Id.* In response, the Punzalans first argue that

---

**2.** In enacting FIRREA, Congress "created a new claims determination procedure by which the creditors of a failed institution may be required to first present their claims to the Receiver for administrative consideration before pursuing a judicial remedy." *Meliezer,* 952 F.2d at 881 (citing 12 U.S.C. § 1821(d)(3)). This "new claims procedure gives the Receiver of a failed financial institution the authority to review claims." *Id. See*

*also* Part III–A *infra* (detailing FIRREA's administrative-claims procedure). However, FIRREA mandates that FDIC give notice to "any creditor shown on the institution's books" by both publication and mail, before it can require those creditors to present their claims for administrative consideration. *See* 12 U.S.C. § 1821(d)(3)(B)-(C) (requiring FDIC to publish notice and mail notice, respectively).

their particular claim is one assumed by Chase Bank under Section 2.1 of the P & A Agreement because their loan was one that was "serviced," and not owned by Washington Mutual.[3] Alternatively, the Punzalans argue that, even if Washington Mutual did own the Punzalans' loan and FDIC thus assumed their claim under Section 2.5 of the P & A Agreement, FDIC may not subject their claim to FIRREA's administrative-claims procedure because FDIC mailed the Punzalans' notice to the wrong address, failing to satisfy FIRREA's mailing requirements. Pls.' Opp'n 8–9; *see* 12 U.S.C. § 1821(d)(3)(C) (requiring FDIC to mail notice to known claimants and creditors).

## II. LEGAL STANDARD

■ Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge a federal court's subject-matter jurisdiction. FED.R.CIV.P. 12(b)(1). Federal courts are courts of limited jurisdiction, and therefore have power to adjudicate claims only when jurisdiction is conferred by statute or the Constitution. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir.1998). A court properly dismisses a case for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998). Because "[t]he burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction," once a defendant files its motion to dismiss for lack of subject-matter jurisdiction, "the plaintiff constantly bears the burden of proof that jurisdiction does in

fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001) (citing in part *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980)); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.2001).

■ The Fifth Circuit has recognized two types of challenges to a court's subject-matter jurisdiction under Rule 12(b)(1): "facial attacks" and "factual attacks." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981) (citing *Menchaca*, 613 F.2d at 511). A "facial attack" occurs when a defendant files a Rule 12(b)(1) motion unaccompanied by supporting evidence. *Id.* In that instance, "the trial court is required merely to look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Id.* In contrast, "if a defendant makes a 'factual attack' upon the court's subject matter jurisdiction over the lawsuit, the defendant submits affidavits, testimony or other evidentiary materials." *Id.* In the event of a factual attack, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id.* "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker*, 645 F.2d 404, 413 (1981) (quoting *Mortensen v. First Fed. Savs. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)) (internal quotations omitted). "This means that the district court is not limited to an inquiry into

---

3. On May 13, 2009, the Punzalans amended their complaint to add Chase Bank as a Defendant. Pls.' First Am. Class Action Compl. ¶ 5. However, the Punzalans request that the

Court continue to include FDIC as a defendant in this action based on the theory that unnamed, potential plaintiffs may have claims against FDIC. Pls.' Opp'n 4–8.

undisputed facts. It may hear conflicting written and oral evidence and decide for itself the factual issues which determine jurisdiction." *Id.*

■ "The district court consequently has the power to dismiss for lack of subject-matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.; accord Den Norske Stats Oljeselskap As v. HeereMac V.O.F.*, 241 F.3d 420, 424 (5th Cir.2001) (citing *Barrera-Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996)).

## III. ANALYSIS

### A. The Punzalan's claim that FDIC failed to provide them notice

In its motion to dismiss, FDIC argues that the Court lacks subject-matter jurisdiction over the Punzalans' claim due to the Punzalans' failure to administratively exhaust their claims with FDIC. In their opposition to FDIC's motion to dismiss, the Punzalans contend that they never received notice of the administrative claims procedure, and consequently failed to timely file an administrative claim with FDIC regarding their lawsuit against Washington Mutual. Pl.'s Opp'n 8, Ex. B. The Punzalans specifically argue that FDIC incorrectly mailed the Punzalans' notice to the zip code of 79902 instead of 79901, the allegedly correct zip code for their attorney's law firm, Firth Johnston Martinez. Pls.' Opp'n 4, 8 Ex. B at 2. The Punzalans have claimed no other deficiency in FDIC's notice aside from this one-digit variation in the zip code.

■ For FDIC to successfully invoke the administrative-claims procedure as to pre-receivership claims like the Punzalans',

FDIC must comply with FIRREA's extensive notice requirements. Under these requirements, FDIC must both publish and mail notice to any creditors and claimants of the failed depository institution, instructing them to present their claims for FDIC's determination. *See* 12 U.S.C. § 1821(d)(3)(B)-(C) (requiring FDIC to publish notice and mail notice, respectively). Regarding the mailing requirement, FIRREA provides that "[t]he receiver shall mail a notice ... to any creditor shown on the institution's books (i) at the creditor's last address appearing in such books; or (ii) upon discovery of the name and address of a claimant not appearing on the institutions books within 30 days after the discovery of such name and address." 12 U.S.C. § 1821(d)(3)(C)(i)-(ii).

■ The Court concludes for two reasons that FDIC complied with FIRREA's notice requirements, and thereby rejects the Punzalans' claim that FDIC's mailed notice was fatally deficient under § 1821(d)(3)(C).

First, to the extent that the correct zip code of Firth Johnston Martinez's office is a fact in dispute, the resolution of which bears on the Court's subject-matter jurisdiction in this case, the applicable standard of review empowers the Court "to decide for itself the factual issues which determine jurisdiction." *Williamson,* 645 F.2d at 413. Moreover, the Punzalans "ha[ve] the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction," *Paterson,* 644 F.2d at 523, and "no presumptive truthfulness attaches to [their] allegations," *Williamson,* 645 F.2d at 413 (quoting *Mortensen,* 549 F.2d at 891). Neither the Punzalans nor the FDIC have presented evidence as to what address, if any, appeared on Washington Mutual's "books." *See* 12 U.S.C. § 1821(d)(3)(C)(i) (providing for notice to be mailed to "any creditor

shown on the institution's books at the creditor's last address appearing in such books").

However, the Court finds persuasive that in nearly all of the five years' worth of documents filed by Mr. Firth in Texas state court, Mr. Firth's very own signature block recites 79902 as the proper zip code for Firth Johnston Martinez's offices. *See, e.g.,* Pls.' Orig. Class Action Pet. at 9, *Punzalan,* No.2003–1308 (Co. Ct. at Law No. 5, El Paso County, Tex., filed Apr. 2, 2003); Plaintiffs' Notice of Appeal, *Punzalan,* No.2003–1308 (Co. Ct. at Law No. 5, El Paso County, Tex., filed June 17, 2008). Moreover, as FDIC correctly notes, 79902 remains the zip code that is listed on the Court's docket for Firth Johnston Martinez. Indeed, while Mr. Firth concludes his response to FDIC's motion to dismiss with a signature block reciting 79901 as the proper zip code for his office, in his Amended Class Action Complaint—a document he filed with the Court less than two days later—Mr. Firth once again incorporates a signature block listing 79902 as the correct zip code. *Compare* Pls.' Opp'n 10 (declaring 79901 as the proper zip code) *with* Pls.' First Am. Compl. 9 (declaring 79902 as the proper zip code). *Cf. Warfield v. Byron,* 436 F.3d 551, 556 (5th Cir.2006) (affirming the entry of default judgment over a plaintiff's objections that he did not receive critical summary judgment documents on the grounds that the Receiver "served each of the critical summary judgment documents ... by regular mail" at the address provided by the plaintiff's attorney in his pleadings and that "[w]ith this evidence in the record, [the plaintiff was] *presumed to have received* the Receiver's pleadings.") (emphasis added).

Accordingly, the Court resolves the factual dispute surrounding the correct zip code of Firth Johnston Martinez's office by finding that FDIC correctly addressed the Punzalans' notice "at [their] last address appearing in [Washington Mutual's] books," and thus complied with FIRREA's notice requirements. 12 U.S.C. § 1821(d)(3)(C)(i). Consequently, the Punzalans failed to administratively exhaust their claims with FDIC, and the Court now lacks subject matter jurisdiction over their suit.

 Second, and in the alternative, even if FDIC did affix the incorrect zip code on the Punzalans' notice, such an error would not render FDIC's notice fatally deficient under the standards of FIRREA. In the Fifth Circuit, " '[p]roof that a letter properly directed was placed in a U.S. Post Office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed.' " *Warfield,* 436 F.3d at 556 (quoting *Beck v. Somerset Techs., Inc.,* 882 F.2d 993, 996 (5th Cir.1989)). "Thus, the question becomes whether the sender properly mailed the notice and not whether the intended recipient received it." *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.),* 62 F.3d 730, 735 (5th Cir.1995) (citing *In re Schepps Food Stores, Inc.,* 152 B.R. 136, 139 (Bankr.S.D.Tex.1993)). Moreover, "[t]o determine if a mailing was accomplished[,] the courts may consider whether the notice was correctly addressed." *Id.* (citing *In re Schepps,* 152 B.R. at 140).

Exhaustive research has uncovered no Fifth Circuit case speaking directly on whether an erroneous zip code renders notice incorrectly addressed for the purpose of rebutting the presumption of its receipt. However, other circuits have held that the use of an incorrect zip code alone does not operate to rebut the presumption of receipt, particularly when the intended recipient presents no evidence that the

notice was returned to the sender for failure of delivery.[4] *See, e.g., Santoro v. Principi,* 274 F.3d 1366, 1370 (Fed.Cir. 2001) ("Similarly, other courts considering this type of issue have held that lack of a zip code or an incorrect zip code will not preclude mail from being 'properly addressed.'"); *In re Longardner & Assocs., Inc.* 855 F.2d 455, 460 (7th Cir.1988) ("Although the presumption of delivery may be weakened by the absence of a zip code . . . it is strengthened in this case by the fact that the notice was never returned"). In the bankruptcy context, the Fifth Circuit *has held* that, when "the notice was not returned to the sender as undeliverable nor was there widespread failure in the mailing of notices," the tardy creditor "failed to rebut the presumption that she was given proper notice." *In re Eagle Bus,* 62 F.3d at 736.

Accordingly, the Court concludes that, even if FDIC utilized an incorrect zip code in the notice it mailed to the Punzalans, this error alone would not rebut the presumption that the Punzalans received the notice, and that FDIC consequently complied with FIRREA. Thus, the Court would still lack subject-matter jurisdiction over the Punzalans' action.

### B. The Punzalans' claim that its lawsuit is one assumed by Chase Bank

The Punzalans also argue that, notwithstanding FDIC's allegedly deficient notice, their lawsuit was actually assumed by Chase Bank under Section 2.1 of the P & A Agreement because Washington Mutual only "serviced" their home loan and did not actually own it. Pl.'s Opp'n 7. Specifically, the Punzalans allege that their "mortgage was not [Washington Mutual's], nor was it ever purchased by [Washington Mutual]. Instead, the obligation arises from [Washington Mutual] servicing another entities [sic] mortgage." *Id.; see also id.* at 6 ("There is simply no question that the Punzalan loan is not an obligation of [Washington Mutual]."). Accordingly, the Punzalans contend that "[t]hese servicing activities were specifically assumed by [Chase Bank] pursuant to paragraph 2.1 of the P & A Agreement, and therefore are not contained in the receivership assets the FDIC administrates." *Id.* The Punzalans have since amended their complaint to add Chase Bank as a defendant.[5]

 While the Punzalans concede that "the only claim against [Washington Mutual] at present is that of the Punzalans," they continue to seek the inclusion of FDIC as a defendant in this lawsuit based solely on speculation that "in the event a class is certified, there potentially are claims against [Washington Mutual] as to mortgages it serviced, which would be subject to the receivership." Pls' Opp'n 5, n. 1. The Punzalans' argument only further counsels for the dismissal of their lawsuit as filed against FDIC. The Punzalans concede that the potential claims of any putative, unnamed plaintiffs would still be subject to FIRREA's exhaustion requirements. *Id.* However, they attempt to avoid dismissal by reasserting that FDIC failed to comply with

---

4. Indeed, the United States Post Office's own standards for deliverable mail which it promulgates in the "DOMESTIC MAIL MANUAL OF THE POSTAL SERVICE" (MAIL MANUAL) pursuant to 39 C.F.R. § 111.5, provide that a deliverable address on most typical mailings may omit the recipient's zip code. MAIL MANUAL 602, § 1.3(e)(2) "Address Elements."

5. In issuing this Order, the Court takes no position on the proper construal of the P & A Agreement, or on the question of whether Chase Bank has indeed assumed the Punzalans' claims.

FIRREA's mailing requirements by virtue of the allegedly erroneous zip code, and consequently failed to invoke FIRREA's administrative-claims procedure as to the unnamed plaintiffs as well. *Id.*

The Court has already found that the Punzalans' argument of deficient notice fails as a matter of fact and law. FDIC has complied with FIRREA by mailing notice to the Punzalans "at the creditor's last address appearing in such books." 12 U.S.C. § 1821(d)(3)(C)(i). FIRREA requires mailed notice only for "any creditor shown on the institution's books," 12 U.S.C. § 1821(d)(3)(C), leaving publication notice as a safeguard for unknown claimants like those whom the Punzalans purport to represent. *See* 12 U.S.C. § 1821(d)(3)(B) (providing for publication notice); *see also Greater Slidell Auto Auction, Inc. v. Am. Bank of Baton Rouge,* 32 F.3d 939, 942 (5th Cir.1994) ("Mailing of notice to claimants known to the receiver is constitutionally required; for such claimants, *publication notice (which is sufficient for unknown claimants)* is constitutionally infirm.") (emphasis added). As noted, the Punzalans do not dispute that FDIC complied with all of FIRREA's publication-notice requirements. *See supra* Part II–D.

Accordingly, to the extent that any unknown plaintiffs in the Punzalan's putative class currently assert claims against FDIC, the Court likewise lacks subject-matter jurisdiction over those claims due to Plaintiffs' failure to administratively exhaust them in accordance with FIRREA.

## IV. CONCLUSION

Based on the foregoing, the Court determines that it lacks subject-matter jurisdiction over the Punzalans' suit as filed against FDIC. Therefore, the Court concludes that the Punzalans' claim against FDIC for wrongful foreclosure under TEX.

PROP.CODE 51.002(d) should be dismissed, and any attendant remedies sought, be denied.

Accordingly, **IT IS ORDERED** that Defendant Federal Deposit Insurance Corporation's "Motion to Dismiss for Lack of Subject–Matter Jurisdiction" (Docket No. 10) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs Angelita Punzalan and Rodolfo Punzalan's claims against Defendant Federal Deposit Insurance Corporation, and on behalf of all others similarly situated, is **DISMISSED WITH PREJUDICE.**