**In re James P. ESPOSITO, II, Leticia D. Esposito, Debtors.**

**Bankruptcy No. 93–64659.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

June 17, 1993.

Ralph Goldberg, Atlanta, GA, for debtors.

Robert L. Rehberger, Stockbridge, GA, for defendant.

## ORDER

MARGARET H. MURPHY, Bankruptcy Judge.

James P. and Leticia D. Esposito (the "Debtors") filed *pro se* a voluntary petition for relief pursuant to Chapter 7, Title 11 March 30, 1993. Debtors executed a Reaffirmation Agreement with Dailey Motors April 1, 1993, to reaffirm the debt on a 1985 Chrysler LeBaron, Debtors' sole means of transportation. Debtors prepared the agreement and persuaded the principal of Dailey Motors, L.C. Dailey, to execute it. Debtors filed the Reaffirmation Agreement with the court May 4, 1993. Before the Reaffirmation Agreement was approved by the court, as required by 11 U.S.C. § 524(c)(6)(A), Dailey Motors repossessed the vehicle May 8, 1993, apparently relying on the terms of the unopposed Reaffirmation Agreement, as supplemented by an oral agreement with Debtors to bring the debt current by early May, 1993. Dailey Motors failed to obtain relief from the automatic stay. As a result of the repossession of the vehicle and loss of transportation, Mr. Esposito's employment at Georgia Duck and Cordage Mill was terminated, and Mrs. Esposito lost the opportunity of a new job at Captain D's Seafood Restaurant she was to begin May 10, 1993. Debtors filed a Motion for Contempt of Court (the "Contempt Motion") May 20, 1993 alleging violation of the automatic stay by Dailey Motors.

Hearing on the approval of the Reaffirmation Agreement was held May 24, 1993. Appearing at the hearing were the Debtors, *pro se* and Dailey Motors by and through counsel, Robert L. Rehberger. Debtors informed the court that a Contempt Motion had been filed with respect to the action of Dailey Motors. Accordingly, the court deferred ruling on the Reaffirmation Agreement until June 4, 1993, the date set for hearing on the Contempt Motion. The court did, nevertheless, admonish the parties to attempt to settle the matter, specifically advising Dailey Motors to return the vehicle to mitigate any further damages. Upon the advice of counsel, Dailey Motors agreed to return the vehicle, and Debtors obtained the vehicle from the Dailey Motors' lot May 25, 1993.

Dailey Motors attempted to settle this matter, but was frustrated by Debtors' statements that they were represented by counsel, and their refusal or inability to identify said counsel. Having been advised that Debtors were represented by counsel, and in an effort to avoid an ethical conflict, Dailey Motors' counsel did not negotiate with Debtors directly. It was not until June 3, 1993 that counsel for Dailey Motors

was advised of the identity of Debtors' attorney. At this time, an offer of settlement was presented to Debtors' attorney, discussed and rejected by Debtors. Dailey Motors offered to return the vehicle free and clear of any lien noted on the certificate of title, and cancel the debt owed Dailey Motors. The amount of the debt Debtors had agreed to pay in the Reaffirmation Agreement was $2,049. Dailey Motors' ledger indicated the debt was near $1400. Dailey Motors also loaned Debtors $151.80 to assist them in the purchase of insurance coverage on the vehicle.

The Contempt Motion and the Reaffirmation Agreement came on for hearing June 4, 1993. Debtors, for the first time, appeared through counsel; Dailey Motors' counsel was engaged May 23, 1993 and appeared at both hearings. Upon the testimony of witnesses and arguments of counsel, and for the reasons stated at the hearing and summarized herein, the Contempt Motion is GRANTED and the Motion to Approve Reaffirmation Agreement is DENIED.

■ The Bankruptcy Code requires a bankruptcy court to conduct a hearing to approve reaffirmation agreements entered into by *pro se* debtors on all consumer debts not secured by real property. 11 U.S.C. § 524(d). The court is required to make findings of fact that the reaffirmation is a voluntary agreement, in the best interest of the debtor, and will not impose an undue burden on the debtor or debtor's dependents. 11 U.S.C. § 524(c)(6). Inasmuch as the reaffirmation agreement is subject to court scrutiny and approval, until such approval is obtained in a § 524(d) hearing, the reaffirmation agreement is unenforceable.

■ If a debtor violates the terms of the agreement before the reaffirmation agreement is approved, or the creditor is not adequately protected, the appropriate course of action for the creditor is to file a motion pursuant to § 362(d) for relief from the automatic stay. A creditor who engages in self-help repossession without a valid, approved reaffirmation agreement or an order lifting the automatic stay violates the automatic stay and, upon motion, engages the provisions of § 362(h). Section 362(h) authorizes the recovery of damages, both actual and punitive, for a party injured by a willful violation of the automatic stay. 11 U.S.C. § 362(h). A "willful violation" of the stay, as distinguished from a "technical violation," occurs when the creditor violates the stay with knowledge of the bankruptcy. *In re Coons*, 123 B.R. 649 (Bankr.N.D.Okla.1991) *citing, In re Locasico*, 77 B.R. 932 (Bankr.S.D.Fla.1987); *In re Santa Rosa Truck Stop, Inc.*, 74 B.R. 641 (Bankr.N.D.Fla.1987). A willful violation does not necessarily require a specific subjective intent to violate the stay. Rather, a willful violation may be found if the creditor knew of the automatic stay and its actions were intentional. *In re Bloom*, 875 F.2d 224 (9th Cir.1989).

■ In the instant case, Mr. L.C. Dailey of Dailey Motors testified that Dailey Motors had actual notice of the bankruptcy case by virtue of the statements of Debtors, as a result of the Notice of Commencement of Case under Chapter 7 of the Bankruptcy Code (the "Notice") sent to all creditors, including Dailey Motors, and by the caption of the Reaffirmation Agreement itself. Dailey Motors received the Notice prior to the date of repossession and was aware of the bankruptcy and the § 341 Meeting of Creditors scheduled for May 4, 1993. Based upon Dailey Motors' knowledge of the pending bankruptcy, the action of repossessing the vehicle was a willful violation of § 362(a), and therefore subjects Dailey Motors to the damages provisions of § 362(h).

■ Having determined the actions of Dailey Motors to be willful, the court must next consider the appropriate measure of damages. Debtors may generally recover damages for violations of the automatic stay. 11 U.S.C. § 362(h); *Carver v. Carver*, 954 F.2d 1573 (11th Cir.1992). Any deliberate act taken in violation of the stay justifies an award of actual damages. Additional findings of maliciousness or bad faith on the part of the offender warrants

further imposition of punitive damages. *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098 (2d Cir.1990); *Davis v. I.R.S.*, 136 B.R. 414 (E.D.Va.1992).

■ While the action of Dailey Motors violated the stay willfully, it was not malicious, and was remedied promptly after the initial hearing on reaffirmation. Upon learning of its violation, Dailey Motors made available the vehicle and set about the business of resolving the issue of damages. Thus, only actual damages are appropriate in this case. An award of punitive damages is not warranted.

■ Both Debtors and Dailey Motors had a duty of good faith and fair dealing to attempt to settle the case per the instructions of the court at the hearing May 24, 1993. In Debtors' case, their duty included such cooperation as might reasonably and promptly mitigate their damages. Debtors did not cooperate nor attempt to mitigate their damages.

■ First, Debtors failed to mitigate their damages. While Mr. Esposito needed the vehicle for transportation to work which was located some thirty miles from his home, he did not attempt, in earnest, to identify any other sources of transportation, including carpooling with any of the Georgia Duck and Cordage Mill employees who might live nearby. Georgia Duck and Cordage Mill employs some 400 persons, several of whom might live in the vicinity of Mr. Esposito. The personnel manager at Georgia Duck and Cordage Mill, Charles A. Joyner, testified that he knew of at least one other worker in the general area where Mr. Esposito lived, and if asked, would have attempted to locate a co-worker or other means of transportation for Mr. Esposito. Unfortunately, Mr. Esposito's failure to inquire on this point appeared consistent with varied previous instances causing Mr. Esposito's absence, leading the employer to conclude that Mr. Esposito was not likely to maintain a permanently reliable attendance record. Mr. Joyner did state that Mr. Esposito was an above-average worker when he was "on the floor," but in light of his sporadic attendance record, in the relatively short period of time employed at Georgia Duck and Cordage Mill, he had to terminate his employment.

Similarly, Mrs. Esposito lost a new job she had recently accepted at Captain D's, which was to begin May 10, 1993. Captain D's is located within walking distance of her home. Rather than walk to work, a distance estimated at approximately one-half mile, her obstinacy with respect to the return of the vehicle and her reliance on it as her sole mode of transportation cost her the job as well as the sympathy of the court.

Second, Debtors did not cooperate with Dailey Motors in settling this matter. Once an offer could ethically be tendered to Debtors through counsel, Debtors stubbornly refused to accept the fair and reasonable settlement proposal made by Dailey Motors—cancellation of the lien of Dailey Motors on the certificate of title to the vehicle, and cancellation of the debt on the vehicle. It appears that Debtors saw an opportunity to capitalize on the mistake of a creditor and sought to pursue that opportunity to the point of a windfall.

■ Although the Debtors' loss of employment was proximately related to the loss of the vehicle, caused by the repossession, the reasonable measure of damages is no more than the wages lost during the period of repossession from May 8, 1993 through May 25, 1993 in the combined amount of $1,503.24. Testimony revealed that Mr. Esposito earned $8.90 per hour for a forty-four to forty-five hour week resulting in gross wages of $416.08. For the three week period covered, this results in total lost wages for Mr. Esposito in the amount of $1,248.24. Mrs. Esposito would have earned $4.25 per hour for a twenty-hour week resulting in gross wages of $85.00. For the three-week period covered, this results in total lost wages for Mrs. Esposito in the amount of $255.00.

■ Likewise, reasonable attorneys fees are recoverable by the Debtors. The court has reviewed the Affidavit of Ralph Goldberg. Mr. Goldberg states that he spent 12.05 hours in representing Debtors at a total cost of $2,711.25. The court

finds that Mr. Goldberg performed competent services for Debtors and represented them well at the hearing; however, it was unnecessary to spend $2,711.25 in time on the matter. Reasonable compensation awarded to Mr. Goldberg for actual, necessary services is in the amount of $1,700.00. Nevertheless, the court finds that reasonable attorneys fees chargeable to the creditor in this matter are limited to $500.00. Had Debtors accepted the reasonable offer of Dailey Motors, fees in this matter would reasonably have been substantially less. In fact, only 3.7 hours were expended from the time of employment to the rejection of the offer by Debtors June 5, 1993. The remainder of the attorneys fees, $1,200.00, should be borne by Debtors.

Total damages aggregate $2,003.24, which sum is remarkably close to the amount of the secured debt on the vehicle, as reflected by the Reaffirmation Agreement, which Dailey Motors offered to cancel. Accordingly, it is hereby

ORDERED that the Contempt Motion is granted; Debtors are awarded damages in the amount of $1,503.24 and attorneys fees in the amount of $500.00, said damages and attorney fees to be paid by the cancellation of the lien of Dailey Motors on the certificate of title to the vehicle, the delivery of the title to Debtors and cancellation of the debt in the amount of $2,049.00. It is further

ORDERED that Ralph Goldberg is awarded compensation in the amount of $1,200.00 to be paid by Debtors. By separate order, Mr. Goldberg is awarded a judgment in the amount of $1,200.00 against Debtors for said compensation. It is further

ORDERED that upon the foregoing findings of fact and conclusions of law, the Application for Approval of Reaffirmation Agreement is DENIED as moot.

IT IS SO ORDERED.