Karen JOHNSON, Plaintiff,

v.

CREDIT ACCEPTANCE CORPORATION, Minnesota Repossessors, Inc., d/b/a Repossessors Inc., Chase Towing & Transport, Inc. and the City of Eagan, Minnesota, Defendants.

No. CIV.99–402(MJD/JGL).

United States District Court, D. Minnesota.

March 20, 2001.

Peter F. Barry, The Barry Law Office, Ltd., Anoka, MN, Thomas J. Lyons, Jr., Consumer Justice Center , St. Paul, MN, for Plaintiff.

Vernle C. Durocher, Jr. and Thomas L. Nuss, Dorsey & Whitney LLP, Minneapolis, MN, for Defendant Credit Acceptance Corporation.

Karen Melling van Vliet and Michael P. North, Johnson & van Vliet, St. Paul, MN, for Defendant Minnesota Repossessors, Inc.

Patrick H. Elliott, Elliott Law Offices, P.A., Edina, MN, for Defendant Chase Towing & Transport, Inc.

John E. Hennen, League of Minnesota Cities, St. Paul,MN, for Defendant City of Eagan.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

### BACKGROUND

In April 1995, Plaintiff Karen Johnson entered into a Retail Installment and Security Agreement ("contract") with Wilkins Used Car Center ("Wilkins") for the purpose of purchasing a 1988 Pontiac Bonneville. Nuss Aff., A. After the purchase, Wilkins assigned the contract to Defendant Credit Acceptance Corporation ("CAC"). *Id.* In October 1995, Plaintiff filed for Chapter 13 bankruptcy. Plaintiff Deposition at 42. This bankruptcy was in effect from October 1995 through June 1998. It was Plaintiff's understanding that in order to reduce the payments required under her bankruptcy, that bankruptcy would have to be dismissed, and she would have to refile bankruptcy and seek reduced payments. *Id.* at 44. She further believed that for a bankruptcy to be dismissed, she would have to stop making the required bankruptcy payments. *Id.* Plaintiff alleges that based on her beliefs in this regard, she stopped making the required bankruptcy payments in March 1998. *Id.* at 43–44.

Because Plaintiff had not made any payments to it since March 1998, CAC notified Plaintiff of the need to remedy her delinquent account. Nuss Aff., Ex. C. When Plaintiff failed to remedy her delinquency, CAC retained Defendant Minnesota Repossessors, Inc. ("MRI") to repossess the vehicle. *Id.*

Plaintiff did refile for bankruptcy on August 7, 1998. Lyons Aff., Ex. B. She alleges that she spoke with someone at CAC about her second bankruptcy filing both prior to and after such filing. Plaintiff Dep. at 47, 49. CAC asserts that its records indicate that in July, Plaintiff did call CAC and notified it of her intent to file for bankruptcy, but that Plaintiff never contacted CAC thereafter. Nuss Aff., Ex. C.

Plaintiff alleges that on two occasions, estimated by Plaintiff to be August 2 and 9, 1998, she was visited by MRI's repossession agent Ernie Hoff at her apartment. On both occasions, she informed Hoff that she had filed for bankruptcy, and that pursuant to the automatic stay provisions, MRI could not repossess her car. Plaintiff Dep. at 51, 64. Plaintiff further claims that in addition to telling Hoff that she had filed for bankruptcy, she also showed him documentation supporting her claim. *Id.* at 55, 57–59, Plaintiff Dep. Ex. 2, Complaint Ex. 2; Order for Partial Bankruptcy Filing.[1] It is Hoff's position that he first visited Plaintiff on August 6, 1998, then again on August 10, 1998, and that Plaintiff did not show him any documentary proof of her second bankruptcy filing on either day. Hoff Dep., at 72–73, 76–77, and 130. He specifically denies ever seeing the Order for Partial Bankruptcy Filing. *Id.,* at 130.

Based on his understanding that the repossession order was still valid, as he had not been provided proof that Plaintiff had indeed filed for bankruptcy, Hoff again went to Plaintiff's apartment complex to repossess the car on August 17, 1998. At approximately 10:30 that evening, Hoff determined that the vehicle in question was parked in front of the garage by Plaintiff's unit. *Id.* at 65. After verifying the Vehicle Identification Number, Hoff called Defendant Chase Towing & Transport, Inc. ("Chase") for a tow truck. *Id.* at 66. After the tow truck arrived, Hoff and the tow truck driver, Rich Sharif, decided to put the car's wheels on go-jacks to pivot the car to allow it to be attached to the tow truck. *Id.* at 67. While getting the go-jacks off the tow truck, Hoff and Sharif were approached by three juveniles, one of which was later identified as Timothy Moeckel, Jr. *Id.,* at 67–68; Moeckel, Jr. Dep. at 16.

Moeckel, Jr. is the son of a close friend of Plaintiff's, Timothy Moeckel, Sr. At that time, the Moeckel family lived in the same complex as Plaintiff. When Moeckel, Jr. saw that Hoff and Sharif were putting Plaintiff's car on the go-jacks, words were exchanged between the Hoff and Moeckel, Jr. Hoff Dep. at 69. Moeckel, Jr. then called Plaintiff to tell her that "some guy was messing with your car." Moeckel Jr. Dep. at 16. When Plaintiff verified that Hoff was there, she ran down to her car and again told Hoff that he couldn't take the car because she had filed for bankruptcy. Plaintiff Dep. at 70. She alleges that she then tried to show Hoff the bankruptcy documents, but that he refused to take them or look at them. *Id.* at 81. Hoff asserts that he and Plaintiff discussed the situation, and eventually, Plaintiff agreed to turn over the car. Hoff Dep. at 89. He denies that Plaintiff ever attempted to show him any papers verifying the bankruptcy that evening. *Id.*

After allegedly agreeing to turn over the vehicle, Hoff states that Plaintiff began to take personal property out of the car. *Id.* at 90. During that time, Hoff states that the juveniles were yelling at them, and that Plaintiff was yelling at the juveniles to

---

1. Plaintiff alleges that she showed the Order for Partial Bankruptcy Filing on August 2 and 9, 1998. However, that would not have been possible as the Order was not created until August 10, 1998.

go home. *Id.* Plaintiff then went back inside to her apartment. Hoff claims she went inside to get the trunk keys. Plaintiff claims she went inside to call the police, as Hoff was continuing with the repossession in spite of the fact that she was protesting and that she had documentation to prove that she had filed for bankruptcy. Plaintiff Dep. at 85.

While she was inside her apartment, Timothy Moeckel, Sr. arrived on the scene and asked Hoff and Sharif what they were doing. Hoff Dep. at 104. Hoff described Moeckel, Sr. as a big guy, and when he approached, he did so in an aggressive manner. *Id.* at 105. When Moeckel Sr. was approximately ten feet from him, Hoff told him to "stop right there." *Id.* at 106. Moeckel, Sr. continued to approach Hoff, and kind of "belly-bumped" him. *Id.* at 106.[2] Hoff states he then told Moeckel, Sr. to back off, that he was interfering with something he had nothing to do with and that he had just assaulted him. *Id.* When Moeckel Sr. continued to approach, Hoff told him he would end up in jail and that he needed to back off. *Id.* At that time, Hoff saw a police car pull into the complex. *Id.*

While in her apartment, Plaintiff admits that she did call 911 because she believed the police would stop the repossession, without endangering her or others. Plaintiff Dep. at 164. As she was calling, however, she saw that the police had arrived, so she hung up the phone. *Id.* at 91–92. Plaintiff then went back outside. *Id.* at 93.

At the time the police arrived, there were quite a few people gathered around Plaintiff's car, causing quite a commotion. *Id.* at 95. The first officer to arrive was Officer Karlen Long, who was responding to a 911 hang-up. Long Dep. 6. Officer

Long testified that upon arriving at the scene, she observed Plaintiff yelling, that she appeared to be upset. *Id.* at 12. She then proceeded to talk with the parties to determine what was going on. *Id.* She quickly learned that a repossession was taking place. *Id.* Officer Long told Moeckel Sr. that he should leave, because he had no business being there, but Moeckel Sr. refused, telling Officer Long that "Well, I guess it's a good time to go to jail." Moeckel Sr. Dep. at 16.

Both Plaintiff and Hoff gave Officer Long the paperwork in their possession that, they believed, showed who had the rights to the car. *Id.* at 16. The parties were then separated. While talking with Plaintiff, Plaintiff alleges that Officer Long told her that she once worked as an agent for a repossession company, and that "there's nothing that can be done unless you go to court." Plaintiff Dep. at 97.[3] After some further discussion, Plaintiff states she agreed to turn over the vehicle, handing the keys over to Officer Long, who immediately gave them to Hoff. *Id.* at 98. Hoff, however, states that Plaintiff gave the keys directly to him. Hoff Dep. at 88, 170–171.

Another Eagan police officer, Officer James Logan had also responded to the 911 hang-up at Plaintiff's complex. Logan Dep. at 8. Upon arriving at the scene, Officer Logan approached Officer Long to find out what was happening. *Id.* 10. He also observed a lady, later identified as Plaintiff, and a big guy upset about the car. *Id.*

Officer Long had requested that a supervisor be sent to the scene, because she had some questions with the paperwork. Long Dep. at 14. Sergeant Greg Johnson

---

**2.** Moeckel Sr. stated at his deposition that he didn't know if Hoff touched him, or if he touched Hoff's hand with his chest. Moeckel Sr. Dep. at 15.

**3.** In her deposition, Officer Long stated that she had never worked as a repossession agent. Long Dep. at 6.

responded to this request. Upon arriving at the scene, he approached Officer Long, who gave him a summary of the situation. *Id.* at 20. Officer Long then asked Sgt. Johnson what should be done, whether they should do anything but keep the peace. *Id.* Sgt. Johnson told Officer Long that he believed that all they could do was keep the peace, but then he called the city attorney. *Id.* at 21. After talking with the city attorney, Sgt. Johnson states he again approached the other officers and the parties and stated that all the police could do was keep the peace. *Id.*

Plaintiff alleges, however, that after Sgt. Johnson called the city attorney, he told the parties that "there's nothing we can do. The ADA said everything is legal and there's nothing we can do to stop this." Plaintiff Dep. at 105. At this, Plaintiff left the premises in her work van. *Id.* at 107.

Hoff and Sharif then proceeded to complete the repossession. Two days later, however, the car was returned to Plaintiff. Plaintiff alleges that some damage was done to the car when it was taken.

Plaintiff brought this action alleging the following claims: that Defendants violated the automatic stay provisions of the Federal Bankruptcy Code; that MRI and Chase violated the Fair Debt Collection Practices Act ("FDCPA") by repossessing the car without a present right to possess; that CAC, MRI and Chase Towing are liable to Plaintiff for wrongful repossession and conversion. Plaintiff has also asserted claims against the City of Eagan pursuant to 42 U.S.C. § 1983, alleging that the City, through its city attorney and police officers, violated Plaintiff's civil rights.

Before the Court are Plaintiff's motions for summary judgment as to all claims asserted, MRI and CAC's motions for partial summary judgment as to punitive damages claim and the wrongful possession and conversion claims, and the City of Eagan's motion for summary judgment.

*Standard for Summary Judgment*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To determine whether genuine issues of material fact exist, the Court determines materiality from the substantive law governing the claim. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Disputes over facts that might affect the outcome of the lawsuit according to applicable law are material. *Id.* A material fact is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–249, 106 S.Ct. 2505.

*Analysis*

1. Violation of the Automatic Stay Provisions of the Federal Bankruptcy Code and the FDCPA

The Federal Bankruptcy Code provides that the filing of a bankruptcy petition acts as an automatic stay, with respect to

... (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

... (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362.

 Once a bankruptcy petition is filed, the stay is effective immediately. *McDonell v. Eggestein,* 357 N.W.2d 168, 170 (Minn.Ct.App.1984). A creditor who engages in self-help repossession without a valid, approved reaffirmation agreement or an order lifting the automatic stay violates the automatic stay is subject to the provisions of Section 362(h). *In re James P.*

*Esposito*, 154 B.R. 1011, 1014 (Bkrtcy. N.D.Ga.1993). That section provides that "an individual injured by a willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). A willful violation of the stay provisions occurs when the creditor acts with knowledge of the automatic stay, and its actions were intentional. *Id.; Knaus v. Concordia Lumber Company, Inc.*, 889 F.2d 773, 775 (8th Cir.1989). A good faith belief in a right to property is not relevant to the determination of whether a violation is willful. *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265, 268–269 (1st Cir.1999).

 There is a genuine issue of fact as to whether Defendants were given actual notice of Plaintiff's bankruptcy prior to the repossession. All Defendants deny that they were given any paperwork prior to the repossession that showed Plaintiff had filed for bankruptcy protection. Because of this fact question, summary judgment as to the claim that Defendants violated the automatic stay provisions must denied. Because Plaintiff bases her FDCPA claim on the allegations that Defendants willfully violated the automatic stay provisions of the Bankruptcy Code, summary judgment as to the FDCPA claims must also be denied.

2. Punitive Damages

 MRI and CAC argue that even accepting Plaintiff's version of the facts as true, that Defendants willfully violated the automatic stay provisions of the bankruptcy code, summary judgment in their favor is appropriate as to Plaintiff's request for punitive damages. To recover punitive damages under the bankruptcy code, a finding of a willful violation is required, as well as a finding of appropriate circum-

stances. *United States of America v. Ketelsen*, 880 F.2d 990 (8th Cir.1989).

In *Ketelsen*, the Eighth Circuit looked to other jurisdictions to determine what circumstances warrant punitive damages under the bankruptcy code. In doing so, it found that appropriate circumstances means egregious, intentional misconduct on the part of the violator. *Id.* This holding was based, in part, on the court's review of cases in other jurisdictions, which addressed punitive damages under the Bankruptcy Code. One such case was *Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289 (4th Cir.1986), in which the debtor was injured during repossession and one of the creditor's agent carried a firearm. Another case reviewed was *In re Wagner*, 74 B.R. 898 (Bankr.E.D.Pa.1987), in which the court determined that punitive damages were warranted where a creditor burst into a debtor's home and threatened to blow his brains out. The final case reviewed by the court in *Ketelsen* was *In re Mercer*, 48 B.R. 562 (Bkrtcy. D.Minn.1985), where it was held that punitive damages were warranted where a creditor kicked in the debtor's door and frightened debtor's children.

The facts of *Ketelsen* involved a creditor that had illegally offset an income tax return after the debtor had filed for bankruptcy protection. The Eighth Circuit found that as the creditor had acted on the advice of counsel, their conduct was distinguishable from the cases cited therein, and did not warrant a finding of punitive damages. *Id.* at 993. *See, also, Knaus, supra* (efforts by a creditor to have the debtor ex-communicated from his church was conduct that warranted punitive damages).

Another case in which a court found that the conduct of the creditor did not warrant punitive damages is *In re Esposito, supra.* In that case, a debtor had filed a pro se bankruptcy petition. On April 1, 1993, the

debtors executed a Reaffirmation Agreement with a creditor to reaffirm the debt on a car. Debtors filed the Reaffirmation Agreement on May 4, 1993, but prior to approval by the court, the creditor repossessed the car, based on an oral agreement between the parties that the debtor would bring the debt current by early May. The court held that this conduct was a willful violation of the automatic stay, but not malicious conduct warranting punitive damages. *Id.* 154 B.R. at 1015.

■ Although the parties have submitted differing accounts of the events that lead to the repossession, and of the repossession itself, Plaintiff has not raised a genuine issue that Hoff, Sharif or the police officers engaged in any egregious, malicious or intentional misconduct. The facts before the Court, primarily in the form of deposition testimony, show that Plaintiff and her neighbors were the only ones that were "irate" and confrontational when the car was repossessed. Plaintiff never described Hoff as being rude or threatening to her during the three occasions in which she had contact with him. Nor did she attribute any rude or threatening behavior to any of the officers that were present during the repossession. There is an issue of fact concerning the physical contact between Hoff and Moeckel, Sr., but even accepting Plaintiff's allegations as true, such facts would not support an award of punitive damages under the Bankruptcy Code. Accordingly, Plaintiff's claim for punitive damages is dismissed.

### 3. Wrongful Repossession

■ MRI and CAC also argue that the facts, if viewed in a light most favorable to Plaintiff, do not support her claim for wrongful repossession. To show wrongful repossession, Plaintiff must show that Defendants breached the peace. *Bloomquist v. First National Bank of Elk River*, 378

N.W.2d 81 (Minn.App.1985). This Court previously held that a breach of the peace occurs during a repossession if there is violence or the threat of violence or the commission of an underlying offense. *Clarin v. Norwest Bank*, Civ. No. 97–2003 (D.Minn. March 8, 1998).

■ Plaintiff claims that there is evidence that Hoff was involved in a minor physical and verbal altercation with Moeckel, Sr. and that loud and abusive language was exchanged between Hoff, Sharif, Plaintiff and her neighbors, that Plaintiff objected to the repossession and that damage was caused to Plaintiff's vehicle during the repossession. Whether or not such allegations support a finding for breach of the peace is a matter for the factfinder. Thus, summary judgment as to the wrongful repossession claim must be denied.

### 4. Conversion

■ Plaintiff alleges that Defendants Chase, MRI and CAC wrongfully converted her vehicle and car keys, when they repossessed her car.

> To constitute conversion, there must be an execution of dominion over the goods which is inconsistent with and in repudiation of the owner's right to the goods or some act done which destroys or changes their character or deprives the owner of possession permanently or for an indefinite length of time.

*Bloomquist*, 378 N.W.2d at 86 (quoting *Hildegarde, Inc. v. Wright*, 244 Minn. 410, 413, 70 N.W.2d 257, 259 (1955)). If Plaintiff prevails on her claim under the bankruptcy code, a jury could find that by repossessing her car, albeit for a short period of time, and her car keys was in repudiation to her ownership rights to the car. In addition, the Court finds that genuine issues of material fact exist with respect to whether she consented to the

repossession of the car and car keys. Accordingly, summary judgment on the conversion claim is not appropriate.

5. Section 1983

The City of Eagan and Plaintiff move the Court for summary judgment as to Plaintiff's Section 1983 claim. In her Complaint, Plaintiff alleges that her constitutional right to her property was violated when the police officers assisted the unlawful repossession of her vehicle, by erroneously advising Plaintiff of her legal rights under federal bankruptcy law, by making and enforcing determinations as to which party had the legal right to the vehicle and by taking an active role in assisting MRI and Chase Towing in illegally repossessing the vehicle.

It is Plaintiff's position that the City did not have a written policy in place regarding the conduct of its officers during a repossession. Plaintiff argues, however, that when Sgt. Johnson called the city attorney for direction, the city attorney, speaking for the City, directed Sgt. Johnson to allow the repossession to take place, contrary to Plaintiff's constitutional rights.

42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

A municipality may be held liable under Section 1983 if the constitutional deprivation was caused by a municipality custom, practice or policy. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), the Court held that municipal liability may attach for a single decision by municipal policymakers under appropriate circumstances. There is no liability against a municipality, however, upon the theory of respondeat superior, because Section 1983 only imposes liability for deprivations *caused* by a defendant, and such causation is hard to find where liability is based merely because of an employment relationship. *Oklahoma City v. Tuttle,* 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

The City asserts that its policy with regard to civil disputes, which includes repossessions, is that the role of the police officer is solely to keep the peace. Plaintiff has not put forth any evidence to suggest otherwise. Plaintiff does allege, however, that the directive of the city attorney during his phone call with Sgt. Johnson is sufficient to establish a municipal policy. To prevail on this claim, Plaintiff must establish that the city attorney gave such a directive, and that the police officers acted pursuant to such directive, and that their conduct deprived her of her constitutional rights.

For police conduct at a private repossession to constitute state action in the deprivation of a constitutional right, the police must do more than keep the peace. *See, Abbott v. Latshaw,* 164 F.3d 141, 147 (3rd Cir.1998) *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2393, 144 L.Ed.2d 794 (1999)(mere presence of police officers at scene of a private repossession does not, alone, constitute state action). *See also, Haverstick Enterprises, Inc. v. Financial Federal Credit, Inc.,* 32 F.3d 989, 995 (6th Cir. 1994)(where officer's presence at repossession was to observe and monitor a peaceful statutory repossession, no state action established). There must be evidence that the police did not remain neutral, and took

affirmative action to assist the repossession. *Abbott*, at 147. For example, in *Abbott*, the court held that evidence showing that a police officer, who advised one party that she had a right to the car, and threatened to arrest another party that was trying to stop the repossession, was sufficient for the trier of fact to find that such officer played a role in an unconstitutional seizure. *Id.* Yet, where the evidence shows that the officers were there only to keep the peace, the court found no state action. *Menchaca v. Chrysler Credit Corporation*, 613 F.2d 507 (5th Cir.1980). The court in *Menchaca* so held even though the plaintiffs testified that they gave up possession of car because the police led them to believe they had no choice, and that one police officer threatened to arrest the plaintiff for breach of peace if he continued to use loud and abrasive language. *Id.* at 511–512.

Applying these legal standards to the facts of this case, the Court finds that Plaintiff has failed to establish a municipal policy that caused the police officers to deprive her of her constitutional rights. First, the Court finds that Plaintiff has not put forth any direct evidence that the city attorney directed the officers to assist with the repossession. Instead, Plaintiff attempts to establish such fact through her deposition testimony. However, in her deposition, Plaintiff testified that Sgt. Johnson approached her after his conversation with the city attorney, and told her "there is nothing we can do to stop it." Plaintiff

Dep. at 105, 107 and 149. The Court finds that this testimony is actually consistent with the testimony of the officers, which was that they determined that they could not get involved. But even if such a directive was given, the evidence presented by Plaintiff does not support her claim that the police officers deprived her of her constitutional rights.

Plaintiff has not presented any evidence that the police officers took any affirmative steps to assist in the repossession. It is Plaintiff's testimony that when she learned the police would not stop the repossession, she turned over her keys and left the scene. *Id.* Plaintiff did not state that the officers told her to relinquish her car[4], that they forcibly took the keys, threatened her in any way or took some overt steps to assist the repossession agents. Rather, she stated in her deposition that the officers did not assist in the towing of her car by moving vehicles, or directing traffic, or assist the repossession agents in any way. *Id.* at 147, 165 and 213.

Contrary to Plaintiff's argument, the facts of this case are not analogous to those in *Booker v. City of Atlanta*, 776 F.2d 272 (11th Cir.1985). In *Booker*, the police officer arrived at the scene with the repossessor, at the repossessor's request, and thereafter stood by to keep the peace. The court determined that a jury could find that because the police officer accompanied the repossession agent to the scene, the officer's presence gave the repossession a "cachet of legality" that had the

4. In her brief in opposition to the City's Motion for Summary Judgment and in Support of her Motion for Summary Judgment against the police, Plaintiff argues that the directions given by the City Attorney caused the officers to instruct Plaintiff to surrender her vehicle and to allow the repossession to occur. Brief at 9. However, this argument misstates Plaintiff's deposition testimony. At no time in her deposition did Plaintiff state that any officer told her to surrender her vehicle and that she

must let the repossession occur. Rather, Plaintiff's testimony regarding Officer Long was that "she would have to go to court" Plaintiff Dep. at 97, and with regard to Sgt. Johnson, that "there is nothing we can do". Plaintiff Dep. at 105, 107. While Plaintiff may have interpreted the police officer's comments to mean that her only alternative was to relinquish her car, such interpretation does not turn the police officer's action into state action. *See, Menchaca,* at 511–512.

effect of intimidating the debtor into not exercising his right to resist. *Id.* at 274. In this case, Plaintiff called the officers to the scene, because it was Plaintiff's intent on using the officers to stop the repossession. When she learned that the officers would not do as she hoped, she turned over her keys.

Because Plaintiff has failed to put forth evidence that creates a genuine issue of fact that the police officers took affirmative steps to assist in the repossession at the direction of the City, there is no state action upon which to base her Section 1983 claim. Summary judgment in favor of the City is therefore appropriate.

IT IS HEREBY ORDERED that:

1. Plaintiff's Motion for Summary Judgment Against Defendants CAC, MRI and Chase Towing is DENIED.

2. Defendant CAC's Motion and MRI's Motions for Partial Summary Judgment is GRANTED in part and DENIED in part. Plaintiff's Claim for Punitive Damages is DISMISSED WITH PREJUDICE.

3. Plaintiff's Motion for Summary Judgment against the City of Eagan is DENIED.

4. Defendant the City of Eagan's Motion for Summary Judgment is GRANTED in its entirety. Count IV of the Complaint is hereby DISMISSED WITH PREJUDICE.