Alphonso **MITCHELL,** et al., Plaintiffs,

v.

**OSCEOLA FARMS CO.,** Defendant.

No. 0580825CIVCOHN.

United States District Court, S.D. Florida.

Dec. 29, 2005.

Gregory S. Schell, Migrant Farmworker Justice Project, Lake Worth, Florida; David L. Gorman, North Palm Beach, FL, James K. Green, West Palm Beach, FL, for the Plaintiffs.

Robert C.L. Vaughan and Joseph B. Klock of Squire, Sanders & Dempsey, Miami, FL, for the Defendant.

## ORDER ON VARIOUS MOTIONS

COHN, District Judge.

**THIS CAUSE** came before the Court on Defendant Osceola Farms Co.'s Motion to Dismiss the Complaint and For Rule 11 Sanctions [DE 13], Defendant's Motion to Stay Discovery and For a Protective Order [DE 14], Plaintiffs' Motion For Class Certification [DE 24, 25], and Defendant's Motion For Extension of Time [DE 28]. The Court has reviewed the Motions, the Plaintiffs' Responses [DE 15, 17, 29],[1] Defendant's Reply [DE 21], Plaintiffs' supplemental authority [DE 22], Defendant's supplement to its Reply [DE 27], and pertinent portions of the record, and is otherwise fully advised in the premises.

Plaintiffs are alien farm workers who allegedly cut sugar cane for Defendant during the late 1980s and early 1990s. They allege that they were not adequately paid pursuant to employment contracts with Defendant, asserting jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(1), and under 28 U.S.C. § 1331. Plaintiffs were all "H–2A" workers under 8 U.S.C. § 1101(a)(15)(H)(ii)(a), which allows U.S. employers to hire alien workers for temporary labor under certain circumstances. Complaint, ¶ 15 (Sept. 9, 2005) [DE 1]. To implement the statute, the U.S. Department of Labor requires employers to submit an application that includes a job offer, known as a "clearance order" or "job order." *Id.*, ¶ 16. These job offers incorporate various Department regulations on wage rates. *Id.*, ¶¶ 16–18. Plaintiffs argue that they accepted the terms of these job offers, incorporating all federal regulations, and Defendants violated those terms by paying wages below those required by federal regulations. *Id.*, ¶¶ 21, 23. Plaintiffs allege that some of them accepted the

contract terms by signing agreements and others accepted the terms orally. *Id.*, ¶ 21.

This action stems from protracted litigation in Florida state courts. Plaintiffs initially brought their claim against five growers and obtained summary judgment in their favor. *See Okeelanta Corp. v. Bygrave,* 660 So.2d 743, 744–47 (Fla.Dist. Ct.App.1995). After the summary judgment was reversed, the trial court severed the case into separate actions against each grower. One grower settled and three successfully defended the suits in trial and on appeal. *See Gordon v. Okeelanta Corp.,* 784 So.2d 537 (Fla.Dist.Ct.App. 2001); *Williams v. Atlantic Sugar Ass'n,* 773 So.2d 1176 (Fla.Dist.Ct.App.2000); *Sugar Cane Growers Coop., Inc. v. Bygrave,* 660 So.2d 743 (Fla.Dist.Ct.App. 1995). Defendant here is the fifth grower.

After several years of litigation, the state court ultimately de-certified Plaintiffs' class in its class action claim against Defendant because the named Plaintiff was missing and Plaintiffs failed to substitute a different representative. *Bygrave v. Sugar Cane Growers Coop., Inc.,* No. 501989CA008690XXCDAA at 5–9 (Fla. 15th Jud. Cir. June 27, 2005) (order granting defendant's motion to decertify). Plaintiffs then voluntarily dismissed the action and filed the instant action. Plaintiffs include in their Complaint allegations concerning the 1991–1992 and 1992–1993 growing seasons. These allegations were not included in the original state court litigation. Rather, they appeared in a separate state action that was never certified as a class action, *Walters v. Atlantic Sugar Ass'n,* No. CL 93–9304 (Fla. 5th Jud. Cir.). The plaintiff in that action voluntarily dis-

---

1. Plaintiffs are 1048 migrant agricultural workers from various Caribbean nations. Defendant allegedly employed Plaintiffs during sugar cane harvest seasons in the late 1980s and early 1990s.

missed his claim shortly after Plaintiffs filed the instant action.

■ The instant action attempts to create a class with members of the decertified class in the previous state action, along with the plaintiff and others similarly situated who brought individual claims regarding the 1991–1992 and 1992–1993 seasons. Defendant argues that the statute of limitations has long since run on all Plaintiffs' claims, the latest of which arose at least 12 years before Plaintiffs filed their Complaint.[2] Plaintiffs argue that the previous class action in state court tolled the statute of limitations.

■ The Supreme Court of the United States has held that the statute of limitations for claims of individual class members is tolled during pendency of a class action and those members may proceed with individual claims following denial of a class certification. *See Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 350, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). Such tolling does not, however, apply to a subsequent class action that merely attempts to correct deficiencies in a previous class action. *See Griffin v. Singletary,* 17 F.3d 356, 359 (11th Cir.1994). "[P]laintiffs may not 'piggyback one class action onto another' and thereby engage in endless rounds of litigation in the district court ... over the adequacy of successive named plaintiffs to serve as class representatives." *Id.* (citation omitted) (quoting *Salazar–Calderon v. Presidio Valley Farmers Ass'n,* 765 F.2d 1334, 1351 (5th Cir.1985)); *see also* 2 Alba Conte and Herbert B. Newberg. Newberg on Class Actions § 6:3 (4th ed.2002) (discussing tolling rule for subsequent class actions).

■ Here, the putative class attempts certification in much the same manner as the putative class in *Griffin.* The state court decertified the class because the named plaintiff was not an adequate representative. The only way to cure this defect would be to assert an adequate representative, something Plaintiffs had ample opportunity to do in state court. Accordingly, the statute of limitations is not tolled for Plaintiffs' class action claims, and this Court lacks jurisdiction under the Class Action Fairness Act.

Nevertheless, because the statute of limitations is tolled for Plaintiffs' individual claims, Plaintiffs may pursue those claims here if the Court has federal question jurisdiction. Plaintiffs argue that the Court has federal question jurisdiction because the breach of contract claim turns on a substantial question of federal law. Specifically, the Court must determine the meaning and purpose of federal immigration statutes and regulations governing the H–2A program in order to determine whether Defendant breached its contracts with Plaintiffs.

■ Federal question jurisdiction under 28 U.S.C. § 1331 exists both for federal causes of action or for "state-law claims

---

**2.** Although Plaintiffs assert federal question jurisdiction, there is no federal law that supplies the statute of limitations for Plaintiffs' claim, which is essentially a breach of contract claim. Accordingly, the Court must look to state law for the appropriate statute of limitations. *See Trawinski v. United Techs.,* 313 F.3d 1295, 1298 (11th Cir.2002) ("When there is no specifically stated or otherwise relevant federal statute of limitations for a federal cause of action, the controlling period would ordinarily be the most appropriate one

provided by state law."); *Wales v. Jack M. Berry, Inc.,* 192 F.Supp.2d 1269, 1286 (M.D.Fla.1999) (applying oral breach of contract statute of limitations for migrant farm worker claim). The statute of limitations in Florida for a breach of contract claim is five years for a written contract, Fla. Stat. § 95.11(2)(b), and four years for an oral contract, *Id.* § 95.11(3)(k). In either case, the statute of limitations has run for Plaintiffs' claim unless Plaintiff can demonstrate that the prior state action tolled the statute.

that implicate significant federal issues." *Grable & Sons Metal Prods. v. Darue Eng'g,* —— U.S. ——, ——, 125 S.Ct. 2363, 2367, 162 L.Ed.2d 257 (2005). Jurisdiction in the latter type of federal question case, however, "demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* "[T]he federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* Thus, in evaluating jurisdictional claims under this type of federal question jurisdiction, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 2368.

▌ Here, there is no express or implied federal cause of action for allen workers under the Immigration and Nationality Act, 8 U.S.C. §§ 1101–1537. *See* Michael Holley, *Disadvantaged By Design: How the Law Inhibits Agricultural Guest Workers From Enforcing Their Rights,* 18 Hofstra Lab. & Emp. L.J. 575, 605–07 (2001) (discussing lack of federal cause of action for allen farm workers). Both parties, however, state that the crux of Plaintiffs' claim concerns the parties' intent with respect to the federally dictated terms in the clearance order, as the terms were not clear and unambiguous. Furthermore, Defendant acknowledges that such intent depends on the underlying federal purpose in setting these terms. Accordingly, Plaintiffs' federal issue—whether the federal purpose of the clearance order terms supports Plaintiffs' claim that Defendant breached those terms by failing to compensate Plaintiffs the appropriate amount—is "actually disputed and substantial."

Whether hearing this federal issue would disturb "any congressionally approved balance of federal and state judicial responsibilities" is a more difficult question. In *Grable & Sons Metal Products,* the Supreme Court held that federal courts had jurisdiction over a quiet title action where the plaintiff claimed that the defendant's title was defective because the plaintiff had not received proper notice under the Internal Revenue Service's governing statute. 125 S.Ct. at 2366. The Court held that federal question jurisdiction was appropriate because the

> Government has a strong interest in the "prompt and certain collection of delinquent taxes" and the ability of the IRS to satisfy its claims from the property of delinquents requires clear terms of notice to allow buyers like [the defendant] to satisfy themselves that the service has touched the bases necessary for good title.

*Id.* (citation omitted) (quoting *United States v. Rodgers,* 461 U.S. 677, 709, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983)).

The Court distinguished *Grable & Sons Metal Products* from its earlier holding in *Merrell Dow Pharmaceuticals Inc. v. Thompson,* 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), where it held that federal court did not have jurisdiction over a state tort claim even though under the law of the forum state, the defendant drug maker's violation of a federal misbranding prohibition gave rise to a presumptive negligence standard. 125 S.Ct. at 2369. The Court explained that "if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases." *Id.* at 2370. In *Grable*

& Sons Metal Products, however, "it is the rare state quiet title action that involves contested issues of federal law. Consequently, jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation." *Id.* at 2371 (citation omitted).

Similarly in the instant case, it is the rare breach of contract action that "involves contested issues of federal law," particularly federal immigration law regarding alien farm workers. Thus, federal question jurisdiction in matters such as this would not open the flood gates and disturb "any congressionally approved balance of federal and state judicial responsibilities."

Moreover, the federal interest in regulating immigration is unquestionably substantial. "For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government." *Mathews v. Diaz,* 426 U.S. 67, 81, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *see also Sudomir v. McMahon,* 767 F.2d 1456, 1464 (9th Cir.1985) ("[F]ederal authority in the areas of immigration and naturalization is plenary."). Additionally, federal courts have long provided a forum for migrant workers to enforce their rights under the Wagner–Peyser Act in circumstances similar to those here. Even before the Wagner–Peyser Act was amended to allow private rights of action, *see* 29 U.S.C. § 1854(a), courts heard claims from migrant workers under an implied right of action. *See Gomez v. Fla. State Employment Serv.,* 417 F.2d 569, 575–77 (5th Cir. 1969).

Accordingly, the Court has federal question jurisdiction over Plaintiffs' individual claims. Those claims that were part of the

prior state class action are not barred by the statute of limitations because the statute was tolled while the class action was pending.[3] Those claims regarding the 1991–1992 and 1992–1993 seasons, however, are time-barred, as the statute of limitations was not tolled by the individual claims in state court. The Court therefore shall dismiss that portion of Plaintiffs' Complaint.

■ With regard to Defendant's motion for Rule 11 sanctions, this motion is defective on two fronts. First, Defendant failed to file the motion separately from its Motion to Dismiss, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Civil Procedure. A failure to file a motion for Rule 11 sanctions separately warrants denial of the motion. *See Wendy's Intern., Inc. v. Nu–Cape Const., Inc.,* 164 F.R.D. 694, 701 n. 2 (M.D.Fla.1996); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1337.1, at 709– 10 (3d ed.2004). Second, Defendant failed to abide by the 21–day "safe harbor" provision of Rule 11(c)(1)(A). Because Defendant filed its motion with the court contemporaneously with service to Plaintiffs, the Court must deny Defendant's motion. *See DeShiro v. Branch,* 183 F.R.D. 281, 287–88 (M.D.Fla.1998).

Finally, turning briefly to the remaining two motions, the Court shall deny Defendant's Motion to Stay Discovery as moot in light of the above ruling. The Court shall also deny Plaintiffs' Motion For Class Certification, because, as explained above, Plaintiffs' class action claim is barred by the statute of limitations. Finally, the Court shall deny Defendant's Motion For Extension of Time as moot.

---

**3.** The Court shall not consider at this time the obvious managerial difficulties of a suit with 1048 Plaintiffs. The Court sees no reason to sever claims pursuant to Rule 42(b) of the Federal Rules of Civil Procedure at this stage of the litigation.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Osceola Farms Co.'s Motion to Dismiss the Complaint and For Rule 11 Sanctions [DF 13] is **GRANTED IN PART** and **DENIED IN PART**, as follows:

    a. Plaintiffs' class action claim is dismissed;

    b. Plaintiffs' claim regarding the 1991–1992 and 1992–1993 harvesting seasons is dismissed;

    c. Defendant's Motion is otherwise denied.

2. Defendant's Motion to Stay Discovery and For a Protective Order [DE 14] is **DENIED**.

3. Plaintiff's Motion For Class Certification [DE 24] is **DENIED**.

4. Defendant's Motion For Extension of Time [DE 28] is **DENIED**.