**Alphonso MITCHELL, et al., Plaintiffs,**

v.

**OSCEOLA FARMS CO., Defendant.**

**No. 05–80825–CIV–COHN/SNOW.**

United States District Court,
S.D. Florida.

Aug. 14, 2006.

Gregory Scott Schell, Florida Legal Services Inc., Lake Worth, FL, James Kellogg

Green, James K. Green, West Palm Beach, FL, David L. Gorman, Gorman & Zeidel, North Palm Beach, FL, Margaret Hennessy, Santa Monica, CA, for Plaintiffs.

Robert C.L. Vaughan, Squire Sanders & Dempsey LLP, Miami, FL, Joseph Peter Klock, Jr., William B. Killian, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

COHN, District Judge.

**THIS CAUSE** came before the Court on Defendant Osceola Farms Co.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Summary Judgment [DE 102–1, 102–2]. The Court has considered Defendant's Motion and the supporting Appendix [DE 103], Plaintiffs' Response[1] [DE 109] and the supporting factual statement [DE 110], Defendant's Reply [DE 121], and Plaintiffs' Sur-reply [DE 128] and is otherwise fully advised in the premises.

### I. BACKGROUND

This action concerns a dispute over wages. Plaintiffs are alien farm workers who allegedly cut sugar cane for Defendant during the 1980s and early 1990s. They allege that they were not adequately paid pursuant to employment contracts with Defendant, asserting jurisdiction under 28 U.S.C. § 1331. The following facts are undisputed.

Plaintiffs were all "H–2A" workers under 8 U.S.C. § 1101(a)(15)(H)(ii)(a), which allows U.S. employers to hire alien workers for temporary labor under certain circumstances. To implement the statute,

---

1. Plaintiffs comprise some 1600 migrant agricultural workers from various Caribbean nations. Defendant allegedly employed Plaintiffs during sugar cane harvest seasons in the late 1980s and early 1990s.

the U.S. Department of Labor requires employers to submit an application that includes a job offer, known as a "clearance order." Essentially, the clearance order is a means by which the Department of Labor can ensure that employers make comparable offers to domestic workers before recruiting temporary aliens. The purpose is to ensure that alien workers do not adversely affect the domestic workforce. *See id.* § 655.102(a); *see also* Michael Holley, *Disadvantaged By Design: How the Law Inhibits Agricultural Guest Workers From Enforcing Their Rights*, 18 Hofstra Lab. & Emp. L.J. 575, 592 (2001) ("[T]he bedrock principle of the H–2A program [is] that the use of guest workers will not adversely affect domestic workers or work conditions."); Note, *Modern–Day Servitude: A Look at the H–2A Program's Purposes, Regulations, and Realities*, 29 Vt. L.Rev. 185, 191 (2004) ("The H–2A program's purpose is to assure agricultural employers an adequate labor force while at the same time protecting the jobs of U.S. workers." (internal quotes omitted)). These clearance offers incorporate various Department regulations on wage rates and benefits, including housing, meals, and transportation. *See* 20 C.F.R. § 655.102(b) (2006).

The regulations allow employers to pay workers on a "piece rate basis" (*i.e.*, per amount of work performed), with some restrictions. *See id.* § 655.102(b)(9)(ii). The regulations leave employers some discretion as to how they calculate the piece rate, but the piece rate must be equal to or greater than the minimum hourly rate of pay set by the Department of Labor. *Id.* § 655.102(b)(9)(ii)(A). If a piece rate does not equal the minimum hourly rate, known as the "Adverse Effect Wage Rate" or AEWR, then the employer is required to supplement the worker's pay. *Id.* Furthermore, if an employer sets out a piece rate, the rate must be "estimated in hourly wage rate equivalents for each activity and unit size." *Id.* § 653.501(d)(2)(vi)

When the Department of Labor approves an employer's application to recruit H–2A workers, the employer must provide to its workers a work contract containing all of the provisions in the clearance order required by regulation. *id.* § 655.102(b)(14). In the absence of a separate work contract, the clearance order terms serve as the work contract. *Id.*

Defendant in this case applied for, and was granted, the opportunity to recruit H–2A workers from the Caribbean during several harvest seasons in the 1980s and early 1990s. The clearance orders in Defendant's application specified a piece rate basis of compensation. Workers were to be paid with a task rate "generally based on numbers of tons of cane cut by an average cane cutter, variety of cane, type of soil, etc." (App. to Osceola Farms Company's Mot. to Dismiss & for Summ. J., Ex. A at 5 (May 31, 2006) [DE 103] ("Def.'s App.").) The clearance order further specified that "[a] worker would be expected to cut an average of eight (8) tons of harvest cane per day throughout the season." (*Id.*, Ex. A at 6.) Defendant recruited temporary alien workers with individual contracts incorporating the same terms as the clearance orders.

In 1989, H–2A workers for Defendant filed a class action lawsuit in Florida state court against various sugar cane growers, including Defendant. The workers alleged that Defendant breached the terms of their work contracts and underpaid them each season. (*See* Def.'s App., Ex. B at 3.)

The state court litigation was long and complex. The workers initially secured summary judgment in their favor, with the trial court holding that they were entitled to at least the AEWR per ton of cane that they cut pursuant to the terms of their contracts—specifically those terms in the

clearance orders quoted above. The Fourth District Court of Appeal reversed, however, holding that the terms of the clearance orders and contracts were ambiguous and, therefore, give rise to a factual dispute. *See Okeelanta Corp. v. Bygrave,* 660 So.2d 743, 749 (Fla. 4th DCA 1995).

Upon remand, the trial court severed the case into separate actions against each grower. One grower settled and three successfully defended the suits in trial and on appeal. *See, e.g. Gordon v. Okeelanta Corp.,* 784 So.2d 537 (Fla. 4th DCA 2001) (per curiam without opinion); *Williams v. Atlantic Sugar Ass'n,* 773 So.2d 1176 (Fla. 4th DCA 2000). Defendant here is the fifth grower.

After some 16 years of litigation, the state court ultimately de-certified Plaintiffs' class in its class action claim against Defendant because the named Plaintiff was missing and Plaintiffs failed to substitute a different representative. *Bygrave v. Sugar Cane Growers Coop., Inc.,* No. 501989CA008690XXCDAA, slip op. at 5–9 (Fla. 15th Jud. Cir. June 27, 2005) (order granting defendant's motion to decertify). Plaintiffs then voluntarily dismissed the action and filed the instant action. Plaintiffs include in their Complaint allegations concerning the 1991–1992 and 1992–1993 growing seasons. These allegations were not included in the original state court litigation. Rather, they appeared in a separate state action that was never certified as a class action, *Walters v. Atlantic Sugar Ass'n,* No. CL 93–9304 (Fla. 5th Jud. Cir.). The plaintiff in that action voluntarily dismissed his claim shortly after Plaintiffs filed the instant action.

In an earlier order, the Court granted, in part, Defendant's Motion to Dismiss, holding that the Court did not have jurisdiction under Class Action Fairness Act of 2005 § 4, 28 U.S.C. § 1332(d), because the statute of limitations on Plaintiffs' class

action claims had run. *See Mitchell v. Osceola Farms Co.,* 408 F.Supp.2d 1275, 1278 (S.D.Fla.2005). The Court further held, however, that on the face of Plaintiffs' Complaint, the Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331. The Court held that the issue of whether the federal purpose of the clearance order terms supports Plaintiffs' claim that Defendant breached those terms was an actually disputed and substantial federal issue. Accordingly, the Court held that, despite the fact that the underlying legal claim concerned state contract law, there was federal question jurisdiction based on the face of the pleadings. *See id.* at 1279–80 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 125 S.Ct. 2363, 2367, 162 L.Ed.2d 257 (2005)). Moreover, the statute of limitations for this claim was tolled pursuant to *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 350, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). *See id.* at 1278.

In the instant motion, Defendant argues that facts beyond the pleadings, including the specific issues that give rise to Plaintiffs' contention that there was a breach of contract, demonstrate that there is no disputed and substantial federal issue under § 1331 and the Supreme Court precedent in *Grable.* Furthermore, Defendant argues that Plaintiffs are judicially estopped from arguing that the Court has federal question jurisdiction because of Plaintiffs' representations during state court proceedings. Accordingly, Defendant argues that the Court must dismiss this action.

## II. SUBJECT MATTER JURISDICTION

### a. *Legal Standard*

■ Attacks on subject matter jurisdiction based upon Rule 12(b)(1) of the Federal Rules of Civil Procedure come in two forms—facial attacks and factual attacks.

A facial attack on the complaint requires only that a court decide whether the plaintiff has sufficiently alleged a basis of subject matter jurisdiction. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.1980).[2] In this situation, a court must accept the allegations in a plaintiff's complaint as true for the purposes of the motion. *Id.* A plaintiff is afforded safeguards similar to those provided in challenging a Rule 12(b)(6) motion. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

On the other hand, a factual attack "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings such as testimony and affidavits, are considered." *Menchaca*, 613 F.2d at 511. A court is free to weigh the evidence in order to satisfy itself that it has the power to hear the case. *Lawrence*, 919 F.2d at 1529. No presumption of truth attaches to a plaintiff's allegations, and the existence of disputed material facts does not prevent a trial court from evaluating for itself the merits of the jurisdictional claim. *Id.*

**b. *Analysis***

Both parties and the Court agree that the Supreme Court's analysis concerning federal question jurisdiction in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005), governs here. The Court in *Grable* held that the issue of federal question jurisdiction over state-law claims depends on whether the state-law claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 125 S.Ct. at 2368. The Supreme Court noted that "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 2367. In a subsequent decision, the Court reiterated that *Grable* presents a "slim category" for federal jurisdiction and that "*Grable* emphasized that it takes more than a federal element 'to open the "arising under" door.'" *Empire Healthchoice Assurance, Inc. v. McVeigh*, — U.S. —, 126 S.Ct. 2121, 2137, 165 L.Ed.2d 131 (2006) (quoting *Grable*, 125 S.Ct. at 2367). With these standards in mind, this Court must consider whether Plaintiffs have demonstrated (1) that their claim necessarily states a federal issue, (2) the issue is actually disputed and substantial, and (3) a federal forum can entertain their claim without disturbing any congressionally approved balance of federal and state judicial responsibilities.

With respect to the first requirement under *Grable*, there is no issue concerning Defendant's compliance with federal regulations. The Fourth District Court of Appeal noted this in its initial decision regarding the trial court's summary judgment order. *See Okeelanta Corp. v. Bygrave*, 660 So.2d 743, 749 (Fla. 4th DCA 1995) ("No question of compliance with federal regulations is involved in this case. The workers claim only that the employers breached the terms of the clearance orders by not paying them enough, not that the terms of the contracts do not comply with federal law."). Rather, the federal issue, as this Court held in its prior Order, concerns whether federal regulations provide some guidance

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 & 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

as to how to interpret the terms of the clearance orders so as to resolve the ambiguity giving rise to the parties' dispute.

This issue was left open-ended in Plaintiffs' Amended Complaint. (*See* Amended Compl., ¶¶ 9–10; *see also id.,* ¶ 18) (Feb. 22, 2006) [DE 58] ("Osceola Farms Co failed to supplement the piece-rate earnings of the Plaintiffs as required by the clearance orders and 20 C.F.R. § 655.102(b)(9)(ii)(A) so as to ensure that each worker's pay period earnings were at least equal to the adverse effect wage rate."). When pressed by this Motion to identify specifically how federal regulations and the interpretation thereof might guide a resolution of the ambiguity in Defendant's contracts, Plaintiffs state that the federal issue is whether the terms of the clearance orders control, or "trump," the contracts that Defendant executed with Plaintiffs. (*See* Pls.' Memo. of Law in Opp'n to Osceola Farms Co.'s Mot. to Dismiss for Lack of Subject Matter Jurisdiction & for Summ. J. at 11 (June 19, 2006) [DE 109] ("The Court must determine whether federal policy concerns underlying the H–2A program require that the clearance order terms trump conflicting provisions in the worker contracts.").) Because some contracts did not incorporate all terms of the clearance orders, Plaintiffs argue, this issue is necessary in determining the meaning of the contracts. In other words, if the Court were to find that the clearance orders need not be incorporated into the contracts, then Plaintiffs would have no claim, as their claim is based on the terms of the clearance orders.

Federal regulations, as noted above, do indeed require that H–2A worker contracts incorporate all terms of the employer's clearance order. *See* 20 C.F.R. § 655.102(b)(14). Based on this regulation, federal courts have held that clearance order terms become a part of H–2A workers' contracts as a matter of law.

*Frederick County Fruit Growers Ass'n v. McLaughlin,* 703 F.Supp. 1021, 1031 (D.D.C.1989). The construction of federal regulations may give rise to federal issues. *See, e.g., Municipality of San Juan v. Corporación Para El Fomento Económico De La Ciudad Capital,* 415 F.3d 145, 148 n. 6 (1st Cir.2005). Moreover, this issue is necessary with regard to Plaintiffs' claim, as their claim for breach of contract appears to concern the clearance orders, not just the individual contracts. Accordingly, Plaintiffs have met the first requirement under *Grable.*

■■■ As to the second requirement, "[a] 'substantial' federal question involves the interpretation of a federal statute that actually is in dispute in the litigation and is so important that it 'sensibly belongs in federal court.'" *Eastman v. Marine Mech. Corp.,* 438 F.3d 544, 552 (6th Cir. 2006) (quoting *Grable,* 125 S.Ct. at 2368). "A case should be dismissed for want of a substantial federal question only when the federal issue is '(1) wholly insubstantial or obviously frivolous, (2) foreclosed by prior cases which have settled the issue one way or another, or (3) so patently without merit as to require no meaningful consideration.'" *Nicodemus v. Union Pac. Corp.,* 440 F.3d 1227, 1236 (10th Cir .2006) (quoting *Wiley v. Nat'l Collegiate Athletic Ass'n,* 612 F.2d 473, 477 (10th Cir.1979)); *see also Cotton v. Burgess,* No. 06–11308, 2006 WL 1912764, *2 (11th Cir.2006) ("The Supreme Court 'has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly unsubstantial, or no longer open to discussion.'" (quoting *Hagans v. Lavine,* 415 U.S. 528, 536–37, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974))).

Here, the issue of whether clearance order terms trump individual contracts with H–2A workers may be of substantial federal interest. The federal government has plenary control over immigration matters and has considerable interest, through the H–2A program, in ensuring that temporary alien workers do not displace or adversely affect the domestic workforce. Nonetheless, the Court finds no dispute as to this issue, especially as it applies to the instant case. Federal law is settled: clearance order terms must be incorporated into the worker contracts. *See* 20 C.F.R. § 655.102(b)(14). Indeed, in the absence of worker contracts, the clearance orders become the contracts. Accordingly, this issue is no longer open to discussion. Defendants admit as much in their Motion. (*See* Osceola Farms Co.'s Mot. to Dismiss for Lack of Subject Matter Jurisdiction & for Summ. J. at 6 n. 6) (May 31, 2006) [DE 102] ("[T]he Department ... authorized Osceola and other similarly situated companies to hire H2–A foreign workers like plaintiffs, under the same terms and conditions as offered to domestic workers in Osceola's clearance orders. When recruited in their home countries, the workers were given individual contracts of employment that, by federal regulation, had to reflect the material terms of employment that were contained in the clearance orders.").

The Fourth District Court of Appeal found that the clearance order terms were ambiguous, and therefore, additional evidence and factfinding was necessary to interpret these terms. Accordingly, this Court would still be left with the task of resolving an ambiguity even after a finding that the clearance orders trump the individual contracts. Resolving ambiguous contractual terms is a matter of state contract law that is appropriate for state court resolution. Therefore, the Court finds that the federal issue in this case is neither substantial nor disputed.

The parties expend considerable efforts disputing whether another issue—whether Defendant shorted Plaintiffs' hours—may be brought in this case. Defendant argues that Plaintiffs' failed to raise this issue in previous, severed state cases, and therefore, it is barred by the statute of limitations. Plaintiffs argue that those cases were different, which is why they were severed, and in this case, the issue was preserved. In either event, this issue has no effect on the Court's subject matter jurisdiction. Even if the Court were to consider whether Defendant shorted hours, this would still be a mere breach of contract claim inappropriate for resolution in federal court. Essentially, Plaintiffs' argument is that Defendant was contractually bound to pay Plaintiffs for a certain amount of hours of work and Defendant breached this agreement through a scheme of undercounting the work performed. Despite its similarity to a Fair Labor Standards Act claim, it is a mere breach of contract claim. Accordingly, it has no impact on the Court's subject matter jurisdiction analysis.

Given the lack of a substantial and disputed federal issue, the Court need not consider the third requirement under *Grable*. In any event, the parties do not dispute the Court's earlier holding that federal jurisdiction in cases such as this would not disturb "any congressionally approved balance of federal and state judicial responsibilities."

### III.  *JUDICIAL ESTOPPEL*

Given the above analysis, the Court need not consider Defendant's judicial estoppel argument.

### IV.  *CONCLUSION*

For the foregoing reasons, the Court finds that it lacks subject matter jurisdic-

**1314**

tion over this action. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [DE 102–1] is **GRANTED.** This case is hereby **DISMISSED.**

2. All pending motions are **DENIED** as moot. The Clerk of Court is hereby directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 14th day of August 2006.